Docket No. 104519.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* M.W., a Minor (The People of the State of Illinois, Appellant,
v. M.W., Appellee).

*Opinion filed January 23, 2009.*

JUSTICE GARMAN delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Kilbride, and Karmeier
concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion, joined by
Justices Thomas and Burke.

## OPINION

Minor-respondent M.W. was adjudicated delinquent by the circuit
court of Cook County. The appellate court vacated the order, finding
that the circuit court lacked subject matter jurisdiction to make such
a finding because the minor's father had not been served with a copy
of the amended delinquency petition, as required by section 5–530 of
the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5–530 (West
2004)). No. 1–05–3127 (unpublished order under Supreme Court
Rule 23).

We granted the State's petition for leave to appeal pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315(a)) and, for the reasons that follow, we reverse the judgment of the appellate court.

## BACKGROUND

Shortly after midnight on a Saturday night in April 2003, a 14-year-old boy was attacked by a group of young people while riding a Chicago Transit Authority bus. His wallet and cell phone were stolen and he was kicked, stomped, and punched by the members of the group, several of whom fled when the bus stopped. The driver caught the attention of a nearby police officer, who boarded the bus. Respondent M.W. and Danielle were still on the bus. They were identified by the victim and another passenger as participants in the attack.

The State filed a petition for adjudication of wardship, charging M.W. with robbery. The record shows that service on M.W.'s mother was attempted, but was not successful. Both of her parents were present at the detention hearing. At that hearing, each parent was provided with a copy of the petition, pursuant to section 5–525 of the Act (705 ILCS 405/5–525 (West 2004)). The case was then continued to a later date. The father did not appear on the later date or at any of the subsequent proceedings.

After several continuances, the matter was set for an adjudicatory hearing. M.W., her mother, and her attorney were present when the State sought and was given leave to amend the petition to add a count of aggravated battery. A hearing on the amended petition immediately followed. The State had not notified the minor's father of its intent to seek leave to amend the petition, nor did it ask for a continuance to do so after leave was granted. M.W., however, did not object to the lack of notice to her absent father.

At the hearing, the victim of the assault and the passenger who witnessed it both testified. M.W. called the officer who took her into custody and also testified on her own behalf. The circuit court found M.W. delinquent on both of the alleged grounds and subsequently sentenced her to five years' probation with mandatory school attendance and 20 hours of community service.

On appeal, M.W. argued that the adjudication of delinquency was void for lack of subject matter jurisdiction because her father had not been served with written notice that the petition had been amended to add the additional charge, in violation of section 5–530 of the Act (705 ILCS 405/5–530 (West 2004)).

The appellate court agreed, relying on this court's decision in *In re C.R.H.*, 163 Ill. 2d 263, 271 (1994) (State's failure to give formal written notice of delinquency proceedings to juvenile's custodial parent violated due process rights of both the juvenile and the parent and rendered the circuit court's orders void for lack of jurisdiction). No. 1–05–3127 (unpublished order under Supreme Court Rule 23).

ANALYSIS

The issues presented in this appeal are: (1) whether the circuit court lacked subject matter jurisdiction to adjudicate the delinquency petition, (2) whether the circuit court lacked personal jurisdiction over the minor's father, and (3) whether it was error, requiring reversal of the judgment, for the circuit court to adjudicate the matter when the State failed to comply with the statutory requirement that the father be given notice of the amendment to the petition.

Because the circuit court did not rule on the jurisdictional questions and was not asked to rule on the notice issue, our review in this matter is *de novo*.

In a general sense, "jurisdiction" refers to the "right or power to interpret and apply the law," or to a court's "sphere of authority or control." Webster's II New Collegiate Dictionary 601 (1999). In a technical, legal sense, however, jurisdiction is composed of two distinct elements: subject matter jurisdiction and personal jurisdiction. If a court lacks either subject matter jurisdiction over the matter or personal jurisdiction over the parties, any order entered in the matter is void *ab initio* and, thus, may be attacked at any time. *People v. Davis*, 156 Ill. 2d 149, 155 (1993). In contrast, an order entered in error by a court having jurisdiction is merely voidable and is, therefore, not subject to collateral attack. *Davis*, 156 Ill. 2d at 155-56.

This case requires us to review the fundamental difference between subject matter jurisdiction and personal jurisdiction. Subject

matter jurisdiction refers to the court's power "to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). Personal jurisdiction is the court's power "to bring a person into its adjudicative process." Black's Law Dictionary 870 (8th ed. 2004).

We answer these jurisdictional questions in the context of the relevant provisions of the Act.

"§1–5. Rights of parties to proceedings.

(1) *** [T]he minor who is the subject of the proceeding and his parents *** have the right to be present, to be heard, to present evidence ***. ***

\* \* \*

(3) Parties respondent are *entitled to notice* in compliance with Sections *** 5–525 *and* 5–530 ***." (Emphases added.) 705 ILCS 405/1–5(1), (3) (West 2004).

"§5–525. Service.

(1) Service by summons.

(a) Upon the commencement of a delinquency prosecution, the clerk of the court *shall issue a summons* with a copy of the petition attached. The summons shall be directed to the minor's parent, guardian or legal custodian and to each person named as a respondent in the petition, except that summons need not be directed (i) to a minor respondent under 8 years of age for whom the court appoints a guardian ad litem if the guardian ad litem appears on behalf of the minor in any proceeding under this Act, or (ii) to a parent who does not reside with the minor, does not make regular child support payments to the minor, to the minor's other parent, or to the minor's legal guardian or custodian pursuant to a support order, and has not communicated with the minor on a regular basis.

\* \* \*

(3) Once jurisdiction has been established over a party, *further service is not required* and *notice* of any subsequent

proceedings in that prosecution *shall be made* in accordance with provisions of Section 5–530.

(4) The *appearance* of the minor's parent, guardian or legal custodian, or a person named as a respondent in a petition, in any proceeding under this Act *shall constitute a waiver of service and submission to the jurisdiction of the court.* A copy of the petition shall be provided to the person at the time of his or her appearance." (Emphases added.) 705 ILCS 405/5–525(1), (3), (4) (West 2004).

"§5–530. Notice.

(1) A party presenting a supplemental or amended petition or motion to the court *shall provide* the other parties with a copy of any supplemental or amended petition, motion or accompanying affidavit not yet served upon that party, *and shall file proof of that service*, in accordance with subsections (2), (3), and (4) of this Section. Written notice of the date, time and place of the hearing, shall be provided to all parties in accordance with local court rules." (Emphases added.) 705 ILCS 405/5–530 (West 2004).

As a threshold matter, we decline the State's invitation to engage in a discussion of the status of M.W.'s parents–whether her father was or was not a "custodial parent," or whether her parents shared some sort of unofficial "joint custody." Section 5–525(1)(a) unequivocally requires that a summons be directed to the minor's parents with only one exception. Summons need not be directed to "a parent who does not reside with the minor, does not make regular child support payments to the minor, to the minor's other parent, or to the minor's legal guardian or custodian pursuant to a support order, *and* has not communicated with the minor on a regular basis." (Emphasis added.) 705 ILCS 405/5–525(1)(a) (West 2004).

M.W.'s parents were never married and the question of her legal custody has not been adjudicated. She lives with her mother. The record does not reveal whether her father contributes to her support or whether there is a support order in place. The testimony at the dispositional hearing, however, reveals that M.W. has a close relationship, including frequent visitation, with her father. The

exception in section 5–525(1)(a), therefore, does not apply to her father.

## Subject Matter Jurisdiction

At oral argument, counsel for the minor conceded that the circuit court had subject matter jurisdiction to adjudicate the matter before it. We must, however, address the appellate court's judgment on the merits because lack of subject matter jurisdiction is not subject to waiver and cannot be cured through the consent of the parties. *People v. Flowers*, 208 Ill. 2d 291, 303 (2003). In addition, "this court has an obligation to take notice of matters which go to the jurisdiction of the circuit court" in each case before us. *Belleville Toyota*, 199 Ill. 2d at 334.

In reaching its decision, the appellate court relied on this court's decision in *In re C.R.H.*, 163 Ill. 2d 263 (1994), which relied, in turn, on *People v. R.S.*, 104 Ill. 2d 1 (1984), and *People v. R.D.S.*, 94 Ill. 2d 77 (1983). A review of the history of these cases is in order.

In *R.D.S.*, the Department of Children and Family Services (DCFS) had been named guardian of the minor-respondent in a previous proceeding. The agency placed the minor in the temporary custody of his mother while it sought an alternate placement. When the State filed a petition charging the minor with theft, and then filed subsequent petitions charging him with additional thefts, it named the minor and his parents as respondents, but did not name the guardian, DCFS. The minor and his mother were served with summons. Neither the father, whose address was not listed on the petitions, nor the guardian were served. *R.D.S.*, 94 Ill. 2d at 79. This court framed the issue as whether "the jurisdiction of the circuit court [is] properly invoked when the State fails to name or notify a court-appointed guardian of a minor in a proceeding brought against the guardian's charge." *R.D.S.*, 94 Ill. 2d at 78-79.

Relying on the "due process requirements of juvenile proceedings as set out by the Supreme Court in *In re Gault*, [387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967)]," and the applicable provisions of the Act (Ill. Rev. Stat. 1979, ch. 37, pars. 704–1 through 704–4), this court concluded that the minor's presence in his mother's home and service upon the mother did not divest the guardian of legal custody

and the resulting right to notice of the proceedings. *R.D.S.*, 94 Ill. 2d at 81-82. Because the State failed to name and notify the guardian, this court held "the trial court's jurisdiction was not properly invoked" and its "subsequent orders were void." *R.D.S.*, 94 Ill. 2d at 83.

In reaching this conclusion, this court did not distinguish between subject matter jurisdiction and personal jurisdiction. The statement that "the trial court's jurisdiction was not properly invoked" suggests that this court was referring to subject matter jurisdiction. Yet the error in *R.D.S.* was the failure to give notice to the guardian of the child whose alleged delinquency was at issue. This could be read as a reference to the circuit court's lack of personal jurisdiction over a necessary party.

Foreshadowing the issue in the present case, Justice Goldenhersh specially concurred, agreeing with the majority that failure to serve the guardian was reversible error, but rejecting the conclusion that the trial court's orders were void for lack of jurisdiction. *R.D.S.*, 94 Ill. 2d at 83 (Goldenhersh, J., specially concurring, joined by Underwood, J.). Justice Goldenhersh clearly understood the majority to be referring to subject matter jurisdiction. He pointed out that the cases relied on for this conclusion predated the adoption of the Illinois Constitution of 1970, which significantly broadened the grant of jurisdiction to the circuit court. *R.D.S.*, 94 Ill. 2d at 85 (Goldenhersh, J., specially concurring, joined by Underwood, J.). Where previously "special statutory jurisdiction" required "strict conformity with the statute" that created the cause of action (*R.D.S.*, 94 Ill. 2d at 84 (Goldenhersh, J., specially concurring, joined by Underwood, J.), citing *Brown v. VanKeuren*, 340 Ill. 118 (1930)), the new constitution expanded the circuit court's jurisdiction to all justiciable matters, making no distinction between statutory and common law causes of action (*R.D.S.*, 94 Ill. 2d at 85 (Goldenhersh, J., specially concurring, joined by Underwood, J.)).

This same difference of opinion was present in *R.S.*, where the State properly named the minor-respondent's mother in the petition and listed her address but did not serve her with notice. *R.S.*, 104 Ill. 2d at 3. The parents were divorced. The minor had lived with his mother for a time but was living with his father when the proceedings commenced. The record did not reveal which parent had "legal

custody" of the minor. He appeared in court with his father, his attorney, and his probation officer. *R.S.*, 104 Ill. 2d at 3-4. Again citing *Gault*, this court concluded:

> "[T]he legislature, through the notice provisions of the Juvenile Court Act, has already determined that the mother must be named and served with notice in order for the trial court to conduct an adjudicatory proceeding. Noncompliance with the notice provisions of the Act here allowed an adjudication of wardship without notice to a named parent, whose address was contained in the petition, and thus violated the right of parent and child to due process." *R.S.*, 104 Ill. 2d at 6.

Again, this court did not use the term "subject matter jurisdiction" when it concluded that the State "did not properly invoke the trial court's jurisdiction," thus rendering the order of adjudication and all subsequent orders "void." *R.S.*, 104 Ill. 2d at 6.

And, again, Justice Goldenhersh specially concurred, distinguishing between the error of failing to give statutorily required notice and the lack of subject matter jurisdiction to enter an order of adjudication. *R.S.*, 104 Ill. 2d at 7 (Goldenhersh, J., specially concurring, joined by Underwood and Simon, JJ.). In light of the adoption of the Constitution of 1970, he described the concept that the due process violation of lack of notice divests the circuit court of subject matter jurisdiction as "an archaic vestige of an earlier body of law" and suggested that it was "time that it be laid to rest." *R.S.*, 104 Ill. 2d at 7 (Goldenhersh, J., specially concurring, joined by Underwood and Simon, JJ.).

This court's decision in *C.R.H.* followed the precedent established in *R.D.S.* and *R.S.* The State's supplemental petition listed the names of both of the minor's parents and his mother's address. His father's whereabouts were unknown. The mother was not served and no effort was made to give notice to the father by publication. *C.R.H.*, 163 Ill. 2d at 267. This court framed the issue as "whether a minor's parents have a constitutional right of due process to receive adequate notice

of a juvenile proceeding."[1] *C.R.H.*, 163 Ill. 2d at 268. Finding no basis for excusing notice to the minor's custodial parent, this court concluded that the circuit court's orders adjudicating C.R.H. a delinquent and sentencing him to the Department of Corrections was "void for lack of jurisdiction." *C.R.H.*, 163 Ill. 2d at 271-72.

The appellate court in the present case expressly agreed with the minor's assertion that the lack of compliance with the statutory notice requirement "rendered the delinquency proceedings void for lack of subject matter jurisdiction." In reaching this conclusion, the appellate court cited both *C.R.H.* and *R.S.* as authority.

However, in a more recent decision, this court signaled an emerging recognition that the question of subject matter jurisdiction under the Juvenile Court Act should be resolved in the manner suggested by Justice Goldenhersh–by asking whether there was a justiciable matter before the court.

In *In re A.H.*, 195 Ill. 2d 408 (2001), we considered whether the circuit court had jurisdiction to remove a minor that it had previously determined to be abused, neglected, or dependent from the temporary foster home. D.C.F.S., which had made the foster placement, objected to the proceeding on the basis that the circuit court lacked jurisdiction

---

[1]This court also considered whether section 1–15(b) of the Act (Ill. Rev. Stat. 1991, ch. 37, par. 801–15(b), now 705 ILCS 405/1–15(b) (West 1994)) was unconstitutional. Section 1–15(b) provides that a "party respondent" who has been properly served or who has appeared personally "and who wishes to object to the court's jurisdiction on the ground that some necessary party either has not been served or has not been properly served must raise that claim before the start of the adjudicatory hearing." We stated that "[i]n essence, section 1–15(b) mandates that a constitutionally protected right, notice to parents, is automatically waived when a minor fails to claim that notice to his or her parents was inadequate." *C.R.H.*, 163 Ill. 2d at 272. We held that "section 1–15(b) improperly infringes on a constitutional right without applying any of the safeguards required for a valid waiver of a constitutional right." *C.R.H.*, 163 Ill. 2d at 273. This provision is not at issue in the present case, but, as is demonstrated below, a minor's forfeiture of an objection to the adequacy of service or lack of service on his or her parents triggers plain-error review, which is an adequate safeguard of the due process rights of the minor.

to act. *A.H.*, 195 Ill. 2d at 411-12. We first addressed "the source of the juvenile court's subject matter jurisdiction over children found abused, neglected, or dependent," which we found was conferred by the legislature via the Juvenile Court Act. *A.H.*, 195 Ill. 2d at 415-16. We noted that the legislature "may create a justiciable matter by creating rights or duties that have no counterpart in common law or equity," but that once such a matter is created, the circuit courts enjoy " 'original jurisdiction of all justiciable matters.' " *A.H.*, 195 Ill. 2d at 415, quoting Ill. Const. 1970, art. VI, §9. We further acknowledged that when the legislature creates a justiciable matter, the court has only that authority conferred upon it by the statute and that the court acts in excess of its authority by taking any action that exceeds its statutory authority. *A.H.*, 195 Ill. 2d at 416.

For example, in *In re Jaime P.*, 223 Ill. 2d 526 (2006), the juvenile court's subject matter jurisdiction was properly invoked when the State filed a petition to adjudicate 17-year-old Jaime P. delinquent based on her admission of guilt to the offense of aggravated arson. The court sentenced her to five years' probation. *Jaime P.*, 223 Ill. 2d at 528. Absent a designation of the case as an "extended jurisdiction juvenile prosecution" under section 5–810 of the Act (705 ILCS 405/5–810 (West 1998)), and providing the juvenile with the resulting procedural safeguards thereby guaranteed, the juvenile court's jurisdiction terminates upon the juvenile's reaching the age of 21. *Jaime P.*, 223 Ill. 2d at 538. The court, therefore, exceeded its statutory authority by denying Jaime P.'s petition to terminate probation when she reached her twenty-first birthday. In this case, the circuit court's authority was limited by the legislature's definition of the justiciable matter it created and "the juvenile court simply possessed no jurisdiction under the Act to continue respondent's probation beyond the end of the court's jurisdiction." *Jaime P.*, 223 Ill. 2d at 540.

However, not every error made by the trial court or every failure to strictly comply with the provisions of the statute creating the justiciable matter is an act in excess of statutory authority that renders the court's judgment void. Thus, we held in *A.H.* that the error of failing to comply with the statutory requirement that the foster parent be given notice "at all stages of any hearing or proceeding under this Act" (705 ILCS 405/1–5(2)(a) (West 1998)) was harmless error that

"did not rise to the level of a due process violation." *A.H.*, 195 Ill. 2d at 424. The circuit court's subject matter jurisdiction was invoked when the State filed the petition for adjudication of wardship pursuant to section 2–13 of the Act (705 ILCS 405/2–13 (West 1998)) and was unaffected by the act of conducting the hearing absent statutorily required notice to the foster parent. Once the court has subject matter jurisdiction over such a matter, the "jurisdiction of the juvenile court over the minor is not limited to the entry of the temporary custody order." Rather, "the juvenile court retains jurisdiction over the temporary custody, both physical and legal, of the minor and that jurisdiction extends to the minor's temporary foster placement." *A.H.*, 195 Ill. 2d at 419. See also *In re Estate of Steinfeld*, 158 Ill. 2d 1 (1994) (where probate court had subject matter jurisdiction and personal jurisdiction over the parties, guardianship order was not void for failure of probate court to follow certain statutory requirements).

Our discussion in *A.H.* reveals our recognition that the question of subject matter jurisdiction is a matter of the justiciability of the class of cases to which the instant case belongs. Error or irregularity in the proceeding, while it may require reversal of the court's judgment on appeal, does not oust subject matter jurisdiction once it is acquired. See *Davis*, 156 Ill. 2d at 157 (a court does not lose jurisdiction because it makes a mistake of law or fact or both).

Our subsequent decision in *Belleville Toyota* provides all of the authority needed to resolve the question of subject matter jurisdiction. In that case, the issue was whether a plaintiff bringing a claim under the Motor Vehicle Franchise Act must, as a prerequisite to invoking the circuit court's subject matter jurisdiction, demonstrate that the claim is not barred by the limitations period contained in the statute. *Belleville Toyota*, 199 Ill. 2d at 333. In effect, the defendant argued that because the plaintiff's cause of action was purely statutory, the court's jurisdiction was limited by the limitations provision of the statute and that any variance from that provision did not result in mere error, but divested the court of jurisdiction.

Regarding subject matter jurisdiction, we stated that "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Belleville Toyota*, 199 Ill. 2d at 334, citing Ill. Const. 1970, art. VI, §9 ("Circuit

Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office. Circuit Courts shall have such power to review administrative action as provided by law"). Thus, subject matter jurisdiction exists as a matter of law if the matter brought before the court by the plaintiff or petitioner is "justiciable."

Generally, a "justiciable matter" is "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335. A matter that would not have been justiciable at common law can become a justiciable matter by act of the legislature. Thus, this court concluded that the legislature's adoption of the Motor Vehicle Franchise Act in 1979 "created a new justiciable matter." *Belleville Toyota*, 199 Ill. 2d at 335.

Echoing Justice Goldenhersh's special concurrences in *R.D.S.* and *R.S.*, we noted that "some case law, however, suggests that the legislature, in creating a justiciable matter, may impose certain unwaivable conditions precedent that must be met before the circuit court may exercise subject matter jurisdiction." We rejected this premise as "contrary to article VI" of the Illinois Constitution. *Belleville Toyota*, 199 Ill. 2d at 335-36. Examining the 1964 amendments to the judicial article of the 1870 constitution and the subsequent adoption of the Constitution of 1970, we concluded that "the legislature's power to define the circuit court's jurisdiction" has been "expressly limited to the area of administrative review." *Belleville Toyota*, 199 Ill. 2d at 337. "In light of these changes, the precedential value of case law which examines a court's jurisdiction under the pre-1964 judicial system is necessarily limited to the constitutional context in which those cases arose." *Belleville Toyota*, 199 Ill. 2d at 337.

"Nevertheless," we noted, "pre-1964 rules of law continue to be cited by Illinois courts, without qualification, creating confusion and imprecision in the case law." *Belleville Toyota*, 199 Ill. 2d at 338. *R.D.S.*, *R.S.*, and *C.R.H.* are just such cases.

In *Belleville Toyota*, the four-year statute of limitations contained in the statute that created the justiciable matter was not "more than an

ordinary statute of limitations" that created a prerequisite to the circuit court's exercise of jurisdiction. *Belleville Toyota*, 199 Ill. 2d at 338. It was, instead, an affirmative defense that the defendant might plead as a bar to liability. See *Belleville Toyota*, 199 Ill. 2d at 344-45. See also 735 ILCS 5/2–619(a)(5) (West 2006) (allowing a defendant to file a motion for involuntary dismissal on grounds that "the action was not commenced within the time limited by law"). The circuit court, therefore, had subject matter jurisdiction "to hear and determine plaintiff's claim because it was among the general class of cases–those presenting a claim under the Act, a justiciable matter–to which the court's constitutionally granted original jurisdiction extends." *Belleville Toyota*, 199 Ill. 2d at 340.

In the present case, the appellate court incorrectly concluded that compliance with the notice requirements of the Act was an unwaivable condition precedent to the circuit court's exercise of subject matter jurisdiction over the justiciable matter before it. The appellate court relied on *C.R.H.*, a case that was decided seven years prior to *A.H.* and eight years prior to *Belleville Toyota* and that was implicitly overruled by those decisions. To the extent that *C.R.H.*, 163 Ill. 2d 263, *R.S.*, 104 Ill. 2d 1, and *R.D.S.*, 94 Ill. 2d 77, conflict with the rule enunciated in *Belleville Toyota*, they are hereby expressly overruled.

Personal Jurisdiction

Unlike subject matter jurisdiction, which is invoked by the filing of a petition or complaint alleging the existence of a justiciable matter, personal jurisdiction is "derived from the actions of the person sought to be bound." *Meldoc Properties v. Prezell*, 158 Ill. App. 3d 212, 216 (1987).

Thus, a petitioner or plaintiff submits to the jurisdiction of the court by filing a petition or complaint, "thereby seeking to be bound to the court's resolution" thereof. *Owens v. Snyder*, 349 Ill. App. 3d 35, 40 (2004). A respondent or defendant may consent to personal jurisdiction by his appearance, or he may have personal jurisdiction imposed upon him by effective service of summons. *Meldoc Properties*, 158 Ill. App. 3d at 216.

-13-

Once the circuit court acquires personal jurisdiction over a party, it has the power to impose personal obligations on him (*Meldoc Properties*, 158 Ill. App. 3d at 216) and that jurisdiction continues until all issues of fact and law in the case are determined (*Whitley v. Lutheran Hospital*, 73 Ill. App. 3d 763, 766 (1979)). Lack of personal jurisdiction, therefore, does not deprive the court of jurisdiction over the subject matter of the dispute; it merely deprives the court of the ability to impose judgment on parties over whom it lacks personal jurisdiction.

Recognizing that the circuit court did indeed have subject matter jurisdiction over the justiciable matter brought before it by the State's petition, M.W. concentrates her argument to this court on the question of the circuit court's personal jurisdiction over her father. However, a party may "object to personal jurisdiction or improper service of process only on behalf of himself or herself, since the objection may be waived." *Fanslow v. Northern Trust Co.*, 299 Ill. App. 3d 21, 29 (1998) (applying Pennsylvania law). Although we have found no Illinois cases expressly stating this principle, M.W. has not cited any authority that would support her standing to object to the circuit court's exercise of personal jurisdiction over her father. Her due process arguments, discussed below, do not implicate personal jurisdiction. We, nevertheless, address the question of personal jurisdiction, which is a matter of statutory interpretation, the answer to which is readily ascertained from the plain language of sections 5–525 and 5–530 of the Act.

With the sole exception mentioned above, the parent of a minor who is the subject of a proceeding under the Act is "entitled to notice" in compliance with sections 5–525 and 5–530 of the Act. 705 ILCS 405/1–5(3) (West 2004). The clerk of the court "shall" issue a summons directed to the minor's parent with a copy of the petition attached "[u]pon the commencement of a delinquency prosecution." 705 ILCS 405/5–525 (West 2004).

Summons may be served upon the minor's parents personally, by certified mail, or by publication. 705 ILCS 405/5–525(2) (West 2004). However, even absent formal service, the "appearance of the minor's parent *** shall constitute a waiver of service and submission to the jurisdiction of the court." 705 ILCS 405/5–525(4)

-14-

(West 2004). At that time, a "copy of the petition shall be provided to the person." 705 ILCS 405/5–525(4) (West 2004).

Thus, when M.W.'s parents appeared at the detention hearing and were given a copies of the petition, personal jurisdiction over them was established.

The Act anticipates that the State may find it necessary to seek leave to supplement or amend a petition. Section 5–530 provides that "[a] party presenting a supplemental or amended petition *** shall provide the other parties with a copy *** and shall file proof of that service." 705 ILCS 405/5–530(1) (West 2004).

Although the general rule is that personal jurisdiction, once established, continues until all matters in the case are resolved, the minor argues that the circuit court's personal jurisdiction over her father was extinguished when the State failed to comply with the notice requirement of section 5–530 after amending the petition.

Reading sections 5–525 and 5–530 together, however, it is clear that this failure did not divest the circuit court of personal jurisdiction over her father. Section 5–525(3) states that "[o]nce jurisdiction has been established over a party, *further service* is not required." Service of summons is one means of establishing personal jurisdiction over a party. *Meldoc Properties*, 158 Ill. App. 3d at 216. Once personal jurisdiction is thus established, "further service" would be redundant. Personal jurisdiction can also be established by the party's appearance "in any proceeding under this Act," which functions as a waiver of formal service, so long as a copy of the petition is provided to the person in lieu of formal service. 705 ILCS 405/5–525(4) (West 2004).

Thus, in a proceeding under the Juvenile Court Act, once personal jurisdiction over a parent is obtained, that jurisdiction continues until the matter is resolved. Although the parent is entitled to "*notice* of any subsequent proceedings" (emphasis added) and of any supplement to or amendment of the petition in accordance with section 5–530, further *service* is not required. Failure to give such notice does not affect the personal jurisdiction already established. Rather, that failure is an error that, if timely raised, may require a remedy.

We conclude, therefore, that the circuit court acquired personal jurisdiction over M.W.'s father when he appeared at the detention hearing and was given a copy of the State's original petition.

Failure to Give Notice to the Minor's Father

M.W.'s final argument is that even if the circuit court had subject matter jurisdiction over the matter and personal jurisdiction over all parties, the State's failure to give notice to her father of the amended petition violated her due process rights and the due process rights of her father. She relies on *In re Gault*, 387 U.S. 1, 33-34, 18 L. Ed. 2d 527, 549-50, 87 S. Ct. 1428, 1446-67 (1967) ("Due process of law requires notice of the sort we have described–that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding. It does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet") and *C.R.H.*, 163 Ill. 2d at 271 (due process rights of both the minor-respondent and his mother were violated by failure to give proper notice to the mother).

The appellate court agreed, finding that the State's failure to comply with the statutory notice requirements violated both the parent's and the child's due process rights.

We note that the father has not claimed error. He has not argued that lack of notice of the amended petition prejudiced his parental rights in any way. We, therefore, reject the minor's argument that reversal is required because her father's due process rights were violated when the circuit court proceeded to hearing on the amended petition despite lack of notice to him. His situation is the same as that of any litigant over whom personal jurisdiction has been established and who fails to appear thereafter.

At oral argument, M.W. elaborated upon her claim that her own due process rights were violated by the State's failure to give notice to her father of the additional charge against her. She suggested that he might have been motivated to attend the later proceedings if he had been aware of the seriousness of the charges against her and that she might have benefitted from his advice and counsel. She did not, however, raise this issue before the circuit court.

In a criminal case, a defendant forfeits review of a claimed error if she does not object at trial and does not raise the issue in a posttrial motion. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). "This principle encourages a defendant to raise issues before the trial court, thereby allowing the court to correct its errors *** and consequently precluding a defendant from obtaining a reversal through inaction." *Piatkowski*, 225 Ill. 2d at 564. This same forfeiture principle applies in proceedings under the Juvenile Court Act (*In re J.P.J.*, 109 Ill. 2d 129, 137 (1985)), although no postadjudication motion is required in such cases (*In re W.C.*, 167 Ill. 2d 307, 327 (1995)).

It should have been evident to all present when the State presented the amended petition, the court granted leave to amend, and the matter proceeded to hearing that notice of the amendment was not given to M.W.'s father. By failing to object, M.W. has forfeited consideration of this error on appeal unless she can demonstrate plain error.

Under Supreme Court Rule 615(a), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). This rule also applies in proceedings under the Juvenile Court Act. See, *e.g.*, *In re Ricardo A.*, 356 Ill. App. 3d 980, 994 (2005) (applying plain-error rule when minor respondent did not raise issue of lack of notice to his noncustodial father in the trial court).

We established in *Piatkowski* that the first step in plain-error review is to determine whether an error occurred. In addition, an unpreserved error will not be "noticed" under Rule 615(a) unless it is "clear or obvious." *Piatkowski*, 225 Ill. 2d at 565 n.2, citing *United States v. Olano*, 507 U.S. 725, 734, 123 L. Ed. 2d 508, 519, 113 S. Ct. 1770, 1777 (1993) (the term "plain" as used in the plain-error rule is synonymous with "clear" or "obvious"; error is not plain if the law was "unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified").

If such an error is found, a reviewing court will grant relief in either of two circumstances: (1) if "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or (2) if the error is "so serious that it affected

-17-

the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565.

The defendant has the burden of persuasion on both the threshold question of plain error and the question whether she is entitled to relief as a result of the unpreserved error. *Piatkowski*, 225 Ill. 2d at 565, quoting *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

In the present case, the State's failure to give notice of the amendment to the father was error. A party's appearance in a proceeding under the Act constitutes consent to personal jurisdiction and waiver of formal service of "the petition" that is pending at that time. 705 ILCS 405/5–525(4) (West 2004). It does not constitute waiver of notice of supplemental or amended petitions under section 5–530. Indeed, section 5–525(3) specifically provides for subsequent notice under section 5–530 to parties over whom "jurisdiction has been established." 705 ILCS 405/5–525(3) (West 2004). Based on the plain language of the applicable sections of the Act, we conclude that the error was also clear and obvious. The question for this court is what remedy, if any, is required.

Having demonstrated a clear and obvious error, M.W. is entitled to a new hearing if the evidence against her was closely balanced.

The victim testified that on the night he was attacked, he boarded the bus with some friends and they sat near the back. His friends later left the bus so he was sitting alone when M.W. and "four or five" other persons boarded. They also sat near the back of the bus. He did not know M.W. or any of the people with her. One of the girls in the group asked to borrow his cell phone to make a call. He gave her the phone to use, but she did not return it. Another girl asked him for a dollar. He stood up and took out his wallet to give it to her. One of the boys then "jumped up" and tried to grab the wallet out of his hands. M.W. was still seated when the two boys began struggling over the wallet. The victim testified that the boy pushed him "on the ground and the next thing, you know, all these kids had started stomping me and punching me." When asked if he saw anyone in court that day who was involved in the punching and kicking, he pointed to M.W.

On cross-examination, counsel demonstrated that the victim was confused about whether his friends left the bus before or after M.W. and the others boarded. He admitted that he could not recall what the boy who took his wallet was wearing. When asked if he covered his head when the group "rushed at" him, he said that he had and he demonstrated his position by putting his hands over his head, tucking his chin to his shoulder, and pulling his head down towards his chest and away from the direction of the blows.

The passenger witness was not one of the several young people on the bus. She was an adult, who sat directly behind the driver. She testified that she observed M.W. and the others board the bus as a group and take seats near the back. She also testified that she saw M.W. among the group that was punching and kicking the victim after he was pushed to the floor of the bus. She saw the victim "trying to hide his face" and holding on to a chain that the attackers were trying to "snatch *** off his neck."

On cross-examination, the passenger explained that she was "always concerned for her safety" when riding the bus late at night because there had been a "prior incident" on the bus. For this reason, she was "looking around" and paying attention to what was happening. She notified the driver that something was going on, but by that time the driver had already stopped the bus. Police officers then boarded the bus and she gave a statement.

M.W. called the arresting officer as a witness in her defense. He testified that he was driving his squad car when he saw "a boy and a couple of girls" run off a bus. The driver of the bus got his attention and signaled to him to board. He and his partner boarded the bus. They spoke to the driver, the adult passenger, the victim, M.W., and the other young people still on the bus. The victim did not initially identify his attackers, except to say that there were "several" of them.

On cross-examination, the officer acknowledged that his written report states that the victim said he was attacked by five persons who struck him in the face and body with their hands and feet. The report identified the attackers as offenders one through five, with M.W. listed as "offender number three."

On redirect, he stated that when he placed M.W. under arrest, she did not have any of the victim's property in her possession.

-19-

M.W. testified on her own behalf that she got on the bus at the same time as Danielle, whom she knew, but who was not a friend, and four other persons whom she did not know. She sat near the back of the bus. Danielle approached the victim and complimented him on his chain. One of the boys asked the victim his name. Danielle then picked up the chain that was around the victim's neck and asked him if he had any money. M.W. said that she saw the victim pull a dollar out of his wallet and give it to Danielle. Another girl approached him and asked to use his cell phone. She did not know this girl but had seen her at the skating rink. The boy then hit the victim and "it started a big incident." The boy took the victim's wallet and cell phone and, while they were fighting, Danielle tried to take his chain. She saw three persons fighting with the victim–the boy, Danielle, and the girl who had asked to use the cell phone. Then "they pulled the red bar and got off the bus." She saw three dollar bills on the floor of the bus, picked them up, and attempted to return them to the victim. He threw it back on the floor. At that point the police boarded the bus. She denied ever hitting or kicking the victim, encouraging anyone to hit him, or taking anything from him.

On cross-examination, M.W. again stated that she was riding the bus by herself, that she had merely boarded at the same time as the other youths. She acknowledged that when the police boarded, she and Danielle were still on the bus.

In *Piatkowski*, as in the present case, the "only evidence linking defendant to the crime was the testimony of the two eyewitnesses." *Piatkowski*, 225 Ill. 2d at 567. We concluded that the defendant in that case was entitled to a new trial based on our application of the factors identified by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382 (1972), for assessing the reliability of identification testimony. These factors include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Although the issue arises in a different context in the present case, these factors provide a useful framework for assessing whether the evidence was closely balanced.

The passenger witness viewed the crime in its entirety and testified that she was paying close attention because she was concerned for her own safety. M.W. was on the bus when the officer boarded and the witness identified her as one of the attackers while all were still present at the crime scene. Thus, there was no measurable delay between the witness's observing the crime being committed and her pointing out M.W. to the officer. Even if we were to conclude that the victim, due to fear or the stress of the situation, may not have been able to identify each of his assailants with absolute certainty, the testimony of the passenger alone is sufficient to weigh the *Neil* factors in favor of the State. As we have noted in the past, a "positive identification by a single eyewitness who had ample opportunity to observe is sufficient to support a conviction." *Piatkowski*, 225 Ill. 2d at 566, citing *People v. Vriner*, 74 Ill. 2d 329, 343 (1978).

We conclude that the evidence that M.W. participated in the aggravated battery of the victim was not so closely balanced that she is entitled to a new hearing on that charge on the basis of plain error.

We must also determine whether the evidence of M.W.'s accountability for the robberies committed by the other youths is closely balanced. She argues that the State's evidence demonstrates that the victim voluntarily gave his cell phone to one of the girls and that an "unknown boy" forcibly took the victim's wallet. She denies taking part in the battery and argues that, at worst, she aided the escape of an unknown assailant after he robbed the victim. Therefore, she argues, she cannot be held accountable for the actions of the others because she did nothing to aid or abet those who committed the robbery either "before or during" the crime.

> "A person is legally accountable for the conduct of another when:
>
> * * *
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5–2 (West 2004).

The State responds that the intent to promote or facilitate the commission of a crime may be shown by evidence that the defendant either shared the criminal intent of the principal or that they shared a common criminal design. *People v. Williams*, 193 Ill. 2d 306, 338 (2000). The State further notes that such intent may be inferred from the circumstances of the crime, citing *In re W.C.*, where this court said:

> "To prove that the defendant possessed the intent to promote or facilitate the crime, the State may present evidence which establishes beyond a reasonable doubt that the defendant either shared the criminal intent of the principal or that there was a common criminal design. [Citation.] The common-design rule provides that where two or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts. [Citation.]

> Proof of the common purpose or design need not be supported by words of agreement, but may be drawn from the circumstances surrounding the commission of an act by a group. Furthermore, the fact that the criminal acts were not committed pursuant to a preconceived plan is not a defense if the evidence indicates involvement on the part of the accused in the spontaneous acts of the group. [Citation.] Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another. *** However, mere presence at the scene, even with knowledge that the crime is being committed, is insufficient to establish accountability for the actions of another." *In re W.C.*, 167 Ill. 2d at 337-38.

In the present case, the evidence shows that M.W. joined the attack on the victim while the crime of robbery was still on-going. The victim was struggling to hold on to or to recover his wallet while he was being kicked and stomped by as many as five assailants. Both the passenger witness and M.W. stated that while the battery was

taking place, Danielle was trying to "snatch" the chain from the victim's neck. The evidence, therefore, shows that even if the acts of the group were spontaneous, M.W. participated in those acts and demonstrated her intent to facilitate the robbery. The circuit court found M.W. accountable for the robbery on the basis of a common plan or design.

Nevertheless, M.W. argues that the circuit court "based its credibility determinations on flawed reasoning and failed to recall inconsistencies" in the victim's testimony. A careful review of the transcript reveals confusion about the sequence of events. Did the victim's companions leave the bus before or after M.W. and the others boarded? Did the victim lend his cell phone before or after he was asked for money? Such minor discrepancies in the evidence, whether between two witnesses or within the testimony of one witness, are not unusual. Indeed, a review of the transcript reveals that much of the confusion about the sequence of events is a result of the manner in which the questions were asked by the two attorneys.

M.W. objects most strenuously to the circuit court's conclusion that it was "inherently improbable" that she boarded the bus with Danielle and several other young people but was not part of their group. However, her subsequent conduct of participating in the attack on the victim does support a finding that she was part of the group, or at least that she chose to be a part of the group at that moment.

The circuit court's finding that M.W. was accountable for the robbery required an assessment of the credibility of the witnesses and an inference of her mental state based on her actions. This may render the balance of evidence on the robbery charge a slightly closer call than the balance of evidence on the aggravated battery charge. Nevertheless, the evidence of M.W.'s accountability for the robbery was not so closely balanced as to require reversal on the basis of plain error.

In reaching this conclusion, we note that the type of error that occurred here–lack of notice of an amended petition to one of the minor's parents–did not affect the evidence presented at the hearing or the manner in which a jury was instructed to evaluate that evidence. In *Piatkowski*, in contrast, the error consisted of an incorrect jury instruction on evaluating eyewitness testimony. The evidence was closely balanced in that case because that particular

" 'error *alone* severely threatened to tip the scales of justice.' " (Emphasis added.) *Piatkowski*, 225 Ill. 2d at 565, quoting *Herron*, 215 Ill. 2d at 187. In the present case, however, the error did not affect the balance of the evidence.

Although M.W. cannot obtain a new hearing on the basis that the evidence was closely balanced, she can nevertheless prevail under the plain-error rule if the error was "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565. She has not framed her argument in these terms, but she has argued that the failure to give notice to her father of the amended petition was a serious error that may have affected the outcome of the proceedings.

M.W. argues that if her father had known of the addition of the aggravated battery charge, he might have attended the adjudicatory hearing and that she might have benefitted from his advice and his presence. At oral argument, counsel for M.W. suggested that her father, if he had been present, might have encouraged her to take responsibility for the lesser offense of aggravated battery while denying responsibility for the greater offense of robbery, leading to a lesser sentence.

However, she does not suggest how the fairness of the proceeding was undermined by his absence. Her mother was present at the hearing and she was represented by counsel. Either of these advisors could have counseled her in the manner suggested by appellate counsel. The one significant decision that she seems to have made, presumably with the advice of these adults, is to testify to her own version of the events on the bus. Even if her father had been present and had persuaded her not to testify, the outcome would not have been different, because there would have been no rebuttal whatsoever to the testimony of the State's witnesses.

We fail to see how the error of failing to give notice of the amended petition to her father, when he had been given notice at the commencement of the proceedings pursuant to section 5–525(4) of the Act and when he had actual notice of the more serious of the two charges, affected the fairness of M.W.'s adjudication or undermined the integrity of the process. Indeed, if a failure of parental notice affects the fairness of the proceeding so seriously that it

-24-

fundamentally undermines the integrity of proceedings under the Act, this court could not have affirmed the adjudications of delinquency in *J.P.J.*, where we concluded that in each of the three consolidated cases:

> "[T]here was no showing of a lack of diligence by the State in failing to locate the noncustodial parent at the commencement of proceedings. Each minor and his mother had notice of the proceedings, and they appeared and had the assistance of counsel; in none of the cases was an order entered against the minor's father. At no time, in any of the cases, did counsel, the minor, or his mother question the State's diligence in ascertaining the whereabouts of the father, though the failure to provide notice to him was evident. Yet counsel, the minor, and his mother are the persons most likely to know the necessary information, and that is especially true when the relationship between the minor and the noncustodial parent is significant or substantial. Accordingly, the State's diligence in identifying or locating a parent whose identity or address was not known to the State at the commencement of the proceedings may not be attacked on appeal if the question was not also raised in the circuit court, where a record on the matter could have been made in the first instance. To hold otherwise would permit the minor to keep the issue in reserve and, if an appeal proves necessary, to raise it then, when the record is barren." *J.P.J.*, 109 Ill. 2d at 139-40.

We conclude, therefore, that M.W. is not entitled to a new adjudicatory hearing on the basis of plain error.


The Minor's Alternative Argument

M.W. argued before the appellate court that the evidence was insufficient to find her guilty of robbery. She renews this argument before this court, noting that of the two crimes charged the robbery carries the longer sentence and that if the adjudication on this basis were reversed she would be entitled to a new sentencing hearing.

We concluded, above, that the evidence of M.W.'s participation in the aggravated battery of the victim and her accountability for the robbery was not closely balanced.

-25-

"Whether the evidence is closely balanced is, of course, a separate question from whether the evidence is sufficient to sustain a conviction on review against a reasonable doubt challenge. The relevant inquiry for reasonable doubt purposes is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Piatkowski*, 225 Ill. 2d at 566, citing *People v. Pollock*, 202 Ill. 2d 189, 217 (2002). The "closely balanced" standard errs on the side of fairness and grants a new trial even if the evidence was otherwise sufficient to sustain a conviction. *Herron*, 215 Ill. 2d at 193.

Therefore, because we concluded above that the evidence supporting the robbery charge is not closely balanced, it is, by definition, sufficient to sustain a conviction. The circuit court's order adjudicating M.W. delinquent on the basis that she committed the crime of robbery must be affirmed.

## CONCLUSION

The order entered by the circuit court was not void for lack of subject matter jurisdiction or personal jurisdiction over the minor's father. The State's failure to comply with the statutory requirement of notice to the minor's father upon amendment of the petition does not constitute plain error. We, therefore, reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE FREEMAN, concurring in the judgment:

I agree that there was no jurisdictional impediment to the circuit court's entry of the delinquency order in this case. I write separately because I reach that conclusion for reasons other than those set forth in today's opinion.

The issue regarding subject matter jurisdiction did not arise in this case until M.W. argued in the appellate court that the circuit court "did not have jurisdiction where [M.W.'s] father, was a named party

-26-

with a known address and was intimately involved in [M.W.'s] life, was not served with the amended petition of adjudication of wardship, rendering [M.W.'s] delinquency adjudication void." In support of her argument, M.W. cited *In re Gault*, 387 U.S. 1, 33, 18 L. Ed. 2d 527, 549, 87 S. Ct. 1428, 1446 (1967), and two of our own cases, *In re C.R.H.*, 163 Ill. 2d 263 (1994), and *In re R.S.*, 104 Ill. 2d 1 (1984). The appellate court agreed with her argument, and, relying on *In re C.R.H.*, held that the failure of the State to provide M.W.'s father with notice of the amended petition "deprived the circuit court of jurisdiction." As a result, the court vacated the trial court's judgment.[2]

Procedurally, then, this court is presented with only one question in this appeal: Did the circuit court have subject matter jurisdiction?[3] If the court did, then this court must reverse the judgment of the appellate court and remand the case to that court for it to consider the remainder of M.W.'s appellate contentions. However, if the circuit court did not have jurisdiction, then the appellate court judgment should be affirmed.

Consistent with the constitutional mandate for due process, *i.e.*, notice and the opportunity to be heard, the Juvenile Court Act requires that petitions set forth the names and addresses of the minor, the minor's parents, and the legal guardian or person or persons having custody and control of the minor. 705 ILCS 405/5–520 (West

---

[2]In light of its holding that the circuit court lacked subject matter jurisdiction, the appellate court did not reach the remainder of M.W.'s appellate arguments.

[3]I do not understand the majority's discussion regarding the standard of review in this case. The majority states that the standard is *de novo* "[b]ecause the circuit court did not rule on the jurisdictional questions and was not asked to rule on the notice issue." Slip op. at 3. This language is somewhat confusing because it suggests that the circuit court did not consider its own jurisdiction. Obviously, by issuing a substantive ruling in this case, the circuit court exercised subject matter jurisdiction. On appeal, the appellate court concluded that the circuit court lacked subject matter jurisdiction. Whether a circuit court properly exercised subject matter jurisdiction is a question of law, which is reviewed *de novo*. *In re John C.M.*, 382 Ill. App. 3d 553, 558 (2008).

2004). Section 5–525 provides that upon the commencement of proceedings, the clerk of the court shall issue a summons with a copy of the petition attached and that the summons be directed to the minor's parent, guardian, or legal custodian, and to each person named as a respondent in the petition. 705 ILCS 405/5–525 (West 2004). The summons shall require each respondent to appear and answer the petition on the date set for the adjudicatory hearing. 705 ILCS 405/5–525(1)(c) (West 2004). The Act provides that "[o]nce jurisdiction has been established over a party, further service is not required and notice of any subsequent proceedings in that prosecution shall be made in accordance with *** Section 5–530." 705 ILCS 405/5–525(3) (West 2004). Moreover, "[t]he appearance of the minor's parent *** in any proceeding under this Act shall constitute a waiver of service and submission to the jurisdiction of the court." 705 ILCS 405/5–525(4) (West 2004).

In Illinois, "[i]f there is a total want of jurisdiction either as to the subject matter or as to the parties, the proceedings are a nullity and no rights are created by them and they may be declared void when collaterally attacked." *Johnston v. City of Bloomington*, 77 Ill. 2d 108, 112 (1979). There is no question that our legislature has deemed juvenile delinquency proceedings a "justiciable matter" for purposes of section 9 of article six of our 1970 Constitution. Article V of the Juvenile Court Act addresses delinquent minors. Section 5–120 of article V gives the juvenile court exclusive jurisdiction of proceedings concerning any minor who, prior to his or her seventeenth birthday, has violated or has attempted to violate, *inter alia*, any state law and provides that no minor who was under the age of 17 at the time of the offense "may be prosecuted under the criminal laws of this State." See 705 ILCS 405/5–120 (West 2004).[4] It is clear then from the language of article V that the legislature has given to the juvenile court the authority to adjudicate a minor delinquent. See *In re A.H.*, 195 Ill. 2d 408, 418-19 (2001) (noting authority given to the juvenile court by the legislature). Proceedings under the Act are initiated by

---

[4]Other sections of article V indicate where the legislature has specified "concurrent jurisdiction" and "excluded jurisdiction." See 705 ILCS 405/5–125, 5–130 (West 2004). Neither of these provisions are implicated in this case.

the filing of a petition for an adjudication of wardship. See 705 ILCS 405/5–520 (West 2004). Thus, once the State filed its juvenile petition in this case, subject matter jurisdiction was established. See *In re Thompson*, 79 Ill. 2d 262, 267-68 (1980) (discussing the continuing nature of subject matter jurisdiction in the juvenile court).

Cases such as *In re C.R.H.* and *In re R.S.* do not compel a different conclusion with respect to subject matter jurisdiction. Unlike the majority, I believe the appellate court mistakenly viewed these cases as addressing subject matter jurisdiction. In neither of these earlier decisions did this court specifically refer to "subject matter" jurisdiction. This is not surprising because both cases addressed the lack of jurisdiction arising from the failure to have served summons on the minors' mothers.[5] Service of summons upon a necessary party, of course, is essential to acquire personal jurisdiction of the court. *Janove v. Bacon*, 6 Ill. 2d 245, 249 (1955). In this case, in contrast to those cases, there is no dispute that M.W.'s father was served with summons so that personal jurisdiction was acquired by the juvenile court. Thus, the circuit court here obtained jurisdiction of the parties upon service of summons and of the subject matter after the State's filing of the delinquency petition. I, therefore, believe that it is unnecessary for this court to overrule *In re C.R.H.*, *In re R.S.*, and *People v. R.D.S.* on the bases asserted in the majority opinion.

In sum, the State's failure to comply with section 5–530 was not an error which affected the circuit court's jurisdiction over the subject matter or the parties. For that reason, the judgment of the appellate court must be reversed. Admittedly, the failure to comply with section 5–530, though not an error that divests a court of either subject matter or personal jurisdiction, may implicate due process concerns. See *In re Gault*, 387 U.S. at 33-34, 18 L. Ed. 2d at 549-50, 87 S. Ct. at 1446-47 (holding that due process requires adequate notice to minors and the parents in juvenile delinquency proceedings). However, whether the State's failure to comply constituted a due process violation is a different question from whether the circuit court properly exercised subject matter jurisdiction in these proceedings and one that can be

---

[5]In *People v. R.D.S.*, 94 Ill. 2d 77 (1983), a case noted by the majority, the minor's legal guardian was never served.

addressed, along with M.W.'s remaining appellate contentions, in the appellate court.

JUSTICES THOMAS and BURKE join in this special concurrence.