**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240631-U

Order filed June 2, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0631 Circuit No. 23-MT-8813 |
| ALEXUS M. WARNER, | ) ) ) | Honorable Marzell Richardson, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Brennan and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The evidence was sufficient to find defendant guilty of leaving the scene of an accident.

¶ 2     The defendant, Alexus M. Warner, appeals her convictions for leaving the scene of an accident, arguing the evidence was not sufficient to prove her guilt. Two eyewitnesses identified the defendant, but she contends those identifications were unreliable.

¶ 3                                      I. BACKGROUND

¶ 4        Gumersindo Nunez and his wife, Sarai Nunez, were traveling west on Route 30 on February 28, 2023, at around 6:15 p.m. While stopped at an intersection, their vehicle was struck from behind. Gumersindo exited his car, went to the back to see where his car had been hit, and told the other driver to wait because he was going to call the police. He also took two photographs of the other car. As Gumersindo was returning to his car to wait for the police, the other driver drove away. Based on this interaction, Gumersindo identified the defendant at a bench trial as the driver of the other vehicle.

¶ 5        Gumersindo admitted on cross-examination that the collision happened at night, and there were headlights pointing toward him when he observed the defendant. When Officer Robert Eber arrived on scene, Gumersindo told him the other driver was a woman "wearing like a head covering" and said, "she was probably around her 20's." He told Officer Eber that he saw her face, although he didn't describe it, and he conveyed that "her skin was similar to [his]," that she was not Hispanic, but black.

¶ 6        Sarai got out of the car as well, and she also took a picture of the damage. She did not speak to the other driver, but she saw her. She also admitted on cross-examination that the accident happened at night, and there were headlights pointed in her direction. When Officer Eber arrived, Sarai was being checked by medical personnel for injuries, and she was eventually transported to the hospital for injuries. Because she was occupied receiving medical treatment, she did not provide a description of the other driver to Officer Eber.

¶ 7        According to Officer Eber, there was moderate rear-end damage to the Nunezes' car. He ensured the Nunezes received medical treatment, completed a report, then communicated with the Illinois State Police to circulate the license plate number of the offending vehicle, which was

2

visible in the photographs taken by Gumersindo and Sarai. He then used the Law Enforcement Agencies Data System (LEADS) to access the name and address of the registered owner.

¶ 8        At trial, defense counsel objected when the prosecutor asked Officer Eber what he discovered about the vehicle after inputting the information into the "state police emergency radio network." The court sustained defense counsel's objection to a lack of foundation, and the prosecutor asked Officer Eber to provide information about the police database, LEADS. Officer Eber did so, and the prosecutor again asked what information Officer Eber gleaned from LEADS. Defense counsel objected once more on the basis of hearsay and lack of foundation. The court overruled the objection, and Officer Eber testified that he found the name and address of the registered owner through LEADS. However, at the time of trial he could not recall the name of the registered owner.

¶ 9        The prosecutor refreshed Officer Eber's recollection using his police report, but when he began to read from the report, defense counsel objected. Officer Eber recounted that he "learned that the vehicle was registered to [the defendant]," and he looked up her address and phone number in a "local police database." The defense objected to Officer Eber's testimony about information gleaned from a local database, and the court sustained the objection. Officer Eber testified he also obtained the defendant's address from LEADS, but he was ultimately unable to locate the vehicle on the night of the collision, and he did not make contact with the defendant that night.

¶ 10        On March 6, 2023, about one week later, Officer Eber was on duty when another officer advised that he had pulled over a vehicle matching the description of the defendant's vehicle with the same license plate. Officer Eber responded to that location and found the vehicle pulled over with damage to its front end. He spoke to the owner of the vehicle, who was a passenger at the time. When asked whether he saw the vehicle owner in the courtroom, he said, "I don't know."

3

However, he recalled that he asked the owner about the collision, and she told him that "her friend was driving the vehicle that day and her friend advised her that she hit a stationary object." Officer Eber could not recall any identifying information about the driver of the car.

¶ 11    In closing arguments, the defendant argued that the Nunezes could not properly identify the defendant. The defendant also argued that the defendant was wearing a mask during the trial, and she was wearing a head covering on the night of the incident.

¶ 12    The court found the defendant guilty of leaving the scene of an accident involving property damage. In pronouncing its verdict, the court noted that Gumersindo and Sarai both identified the defendant, and the photographs taken by Gumersindo led to a vehicle owned by the defendant. The court sentenced the defendant to twelve months' conditional discharge and ordered restitution in the amount of $500. The defendant appealed.

¶ 13                                II. ANALYSIS

¶ 14    On appeal, the defendant argues that no rational trier of fact could have found the evidence sufficient to establish her guilt because the eyewitness identifications were unreliable. In addition, the defendant contends that "[w]ithout credible eyewitness testimony, the State's only other evidence [as to the defendant's identity] was Officer Eber's testimony," which the defendant asserts contained improper hearsay about the vehicle's registration information. The defendant does not allege the State failed to prove that a crime occurred or that the State failed to prove any element of the offense. Instead, she asserts the State failed to prove she was the perpetrator.

¶ 15    In analyzing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "This

4

standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009).

¶ 16        On appeal, we will not retry a defendant. *People v. Austin M.*, 2012 IL 111194, ¶ 107. Our review requires us to draw all reasonable inferences from the evidence in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. A judgment will not be reversed unless it "is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt." *People v. Ross,* 229 Ill. 2d 255, 272 (2008). Where a finding of guilt depends on eyewitness testimony, our task is to decide whether the tier of fact could reasonably accept the testimony as true beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 17        We have long held that a valid conviction may be based on a positive identification by a single witness with ample opportunity to observe the defendant. *In re M.W.*, 232 Ill. 2d 408, 435 (2009). Relevant factors to be considered under such circumstances include (1) the witness's opportunity to view the offender at the time of the offense, (2) the witness's degree of attention at the time of the offense, (3) the accuracy of any previous description of the offender by the witness, (4) the degree of certainty shown by the witness in identifying the defendant, and (5) the length of time between the offense and the identification." *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 47 (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). "No single *Biggers* factor by itself conclusively establishes the reliability of identification testimony; instead, the trier of fact must consider all the factors." *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 22. Importantly, "once identification evidence has been properly admitted, the decision to credit the identification must be resolved by the finder of fact." *People v. Johnson*, 2026 IL 131337, ¶ 70.

¶ 18        Thus, as *Johnson* instructs, the question before us is not whether the circumstances of the identification create a substantial likelihood of misidentification, but whether "no reasonable person could accept [the identification evidence] beyond a reasonable doubt." *Id*. ¶ 72. Reviewing the evidence in the light most favorable to the State, we cannot conclude that the evidence was so unsatisfactory that no reasonable person could accept it beyond a reasonable doubt. See *People v. Smith*, 185 Ill. 2d 532, 541 (1999). The testimony of Gumersindo and Sarai was, in the circuit court's view, credible. See *Macklin*, 2019 IL App (1st) 161165, ¶ 23 (where the trial judge finds a victim's identification sufficient to sustain the burden of proof, the finding indicates the identification is reliable under *Biggers*). Our task is to determine whether the circuit court's determination was erroneous under the *Collins* standard.

¶ 19        The record reflects that the court was aware of the conditions that may have interfered with identifying the defendant, including the fact that it was night, the presence of headlights, the glass between the victims and the defendant, the potential for distraction, the fact the defendant was wearing a head covering, and the time between the offense and the trial. However, the court was also aware that both victims had an opportunity to view the defendant from about six feet away, both victims were looking at the defendant to see who had hit their vehicle, Gumersindo spoke to the defendant and provided an accurate description of her to Officer Eber, and both victims positively identified the defendant in court. "It is the trier of fact's responsibility to determine the witnesses' credibility and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). Based on the record presented, a rational trier of fact could have found that the Nunuzes accurately identified the defendant.

6

¶ 20    In so finding, we reject the defendant's argument that the defendant's face mask at the time of trial prevented the Nunezes from identifying her. The record is incomplete with respect to the details of the mask worn by the defendant at trial. The defendant did not object to the Nunezes' identifications at trial, and the record does not establish what type of mask the defendant wore, how she wore it, or whether it was worn throughout the trial. Although the defendant's attorney referenced the mask in closing arguments, closing arguments are not evidence. See *People v. Williams*, 2022 IL 126918, ¶ 40. In any event, the court was aware the defendant was wearing a mask and accepted the identifications anyway. Facial coverings are not themselves disqualifying of an identification. See *People v. Barnes*, 364 Ill. App. 3d 888, 894 (2006) (the defendant was positively and reliably identified despite wearing a hood and a bandana covering most of his face).

¶ 21    In reaching this conclusion, we also reject the defendant's assertion that the State's evidence was insufficient because the court relied on improper hearsay evidence. The defendant herself suggests that this argument succeeds only if we reject the court's findings with respect to the Nunezes' identification of the defendant. As noted above, the testimony of a single eyewitness with an opportunity to observe the defendant is sufficient to sustain a conviction. *M.W.*, 232 Ill. 2d at 435. The erroneous admission of hearsay evidence is harmless error "when it is merely cumulative or is supported by a positive identification or other corroborative circumstances." *People v. Prince*, 362 Ill. App. 3d 762, 776 (2005). Here, where the Nunezes' identification of the defendant provided independent evidence of the defendant's identity, we need not determine the propriety of the court's evidentiary rulings. To the extent the court erred in admitting hearsay evidence, it was cumulative of the positive identification provided by the eyewitnesses.

¶ 22                                III. CONCLUSION

¶ 23    The judgment of the circuit court of Will County is affirmed.

7

¶ 24  Affirmed.