NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231023-U

NOS. 4-23-1023, 4-23-1024, 4-23-1025 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 8, 2024
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| *In re* I.L., a Minor | Appeal from the |
| | Circuit Court of |
| (The People of the State of Illinois, | Winnebago County |
| Petitioner-Appellee, | Nos. 19JA322 |
| v. (No. 4-23-1023) | 19JA323 |
| Nina K., | 19JA324 |
| Respondent-Appellant). | |
| | |
| *In re* An. L., a Minor | |
| | |
| (The People of the State of Illinois, | |
| Petitioner-Appellee, | |
| v. (No. 4-23-1024) | |
| Nina K., | |
| Respondent-Appellant). | |
| | |
| *In re* Al. L., a Minor | |
| | |
| (The People of the State of Illinois, | |
| Petitioner-Appellee, | |
| v. (No. 4-23-1025) | Honorable |
| Nina K., | Erin B. Buhl, |
| Respondent-Appellant). | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the judgment of the trial court terminating
        respondent's parental rights because (1) respondent agreed to the admission of the
        documents she now challenges as improper hearsay and a violation of her due
        process rights, (2) the court's fitness findings were not against the manifest weight

of the evidence, and (3) the record does not show that the court relied on *in camera* statements by the children when considering her fitness.

¶ 2        Respondent, Nina K., is the mother of I.L. (born May 2014), An. L. (born April 2011), and Al. L. (born June 2010). In October 2023, the trial court found respondent was an unfit parent under the Adoption Act (see 750 ILCS 50/1(D)(b), (m)(ii) (West 2022)) and that termination of respondent's parental rights would be in the children's best interest.

¶ 3        Respondent appeals, arguing that (1) her due process rights were violated because the State relied on multiple levels of hearsay to prove her unfitness, (2) the trial court's fitness determinations were against the manifest weight of the evidence, and (3) the court improperly considered the children's *in camera* statements as part of its fitness determination. We affirm.

¶ 4                                I. BACKGROUND

¶ 5        This order disposes of three cases the trial court considered together and which we have consolidated on appeal. Each appeal relates to a single child. The appeal of Henry L., the children's putative father, is separately addressed in appellate court case Nos. 4-23-1234, 4-23-1235, and 4-23-1236.

¶ 6                              A. Initial Proceedings.

¶ 7        In July 2019, the State filed two two-count petitions seeking adjudications that I.L. and An. L. were neglected minors under the provisions of section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2018)). These two petitions alleged that I.L. and An. L.'s environment was injurious to their welfare in that Al. L. (who was part of the same household) received excessive corporal punishment and that I.L. and An. L. were in a home in which domestic violence occurred. Also in July 2019, the State filed a two-count petition alleging that Al. L was a neglected minor under section 2-3(1)(b) of the Act and an abused minor under section 2-3(2)(i) of the Act (*id.* § 2-3(2)(i)). She was an abused minor in that a household

member—Henry L.—"inflict[ed], cause[d] to be inflicted, or allow[ed] to be inflicted upon [Al. L.] physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function." She was a neglected minor in that she was in a home in which domestic violence occurred.

¶ 8        In September 2019, Henry L. stipulated to the counts alleging that I.L. and An. L. were neglected because they were exposed to the excessive corporal punishment of Al. L. and that Al. L. was abused because she had been physically injured. Nina K. then waived her right to a hearing. The trial court then adjudicated Al. L. to be an abused minor and I.L. and An. L to be neglected minors. The court named the Illinois Department of Children and Family Services (DCFS) as the children's guardian.

¶ 9        B. The Proceedings for Termination of Parental Rights

¶ 10        In March 2023, the State filed petitions to terminate respondent's parental rights as to each child, alleging she had failed (1) "to maintain a reasonable degree of interest, concern or responsibility as to the [minors'] welfare" and (2) to make reasonable progress toward the return of the children during the nine-month periods of (a) December 7, 2020, to September 7, 2021; (b) September 7, 2021 to June 7, 2022; or (c) June 27, 2022 to March 27, 2023.

¶ 11        A hearing on the unfitness portion of the termination petitions took place in May 2023. Respondent has challenged the trial court's unfitness finding but not its best interest finding. Accordingly, we set out details only of the unfitness portion.

¶ 12                1. *The State's Evidence*

¶ 13                a. Stipulations to the Admission of Evidence

¶ 14        After the trial court, with the agreement of the parties, took judicial notice of the filings in the case, the State told the court that the parties had "no objection to the foundational

requirements of all the State's exhibits." The lawyers for respondent and Henry L. agreed that this was correct. The State's exhibits included (1) the integrated assessments of both parties, (2) two DCFS "indicated packages," (3) psychological assessments of respondent and Henry, and (4) the information and guilty plea documents from the criminal case against Henry, which stemmed from the incident in which he inflicted harm on Al. L.

¶ 15　　　　These documents show, among other things, that the State had charged Henry L. with one count of aggravated battery of a child (720 ILCS 5/12-3.05(b)(2) (West 2018)). The information in that case alleged that, on July 20, 2019, Henry grabbed Al. L., causing her to suffer bruising. Henry entered a fully negotiated plea to the charged offense and received a sentence of 24 months' probation. According to the DCFS investigator's report of the incident, Al. L. got into an argument with Henry and then punctured his waterbed with a pen. She ran to hide from him, but he pulled her out of a closet and choked her until she started to black out. He stopped when respondent yelled at him to stop. This incident took place in the presence of An. L. and I.L.

¶ 16　　　　　　　　b. The Testimony of Evanya Perry-Burks

¶ 17　　　　Evanya Perry-Burks, a caseworker at Youth Service Bureau of Illinois Valley (YSB), testified she initially received reports that respondent had described being the victim of domestic violence. Later, Perry-Burks heard no domestic violence had occurred. YSB continued to "have concerns regarding domestic violence in [respondent's] relationships" because "there's still a lack of clarity between whether [domestic violence] incidents happened in terms of maintaining consistent answers." In later testimony, she stated that the details of the incident had never been clarified. For instance, at an unspecified hearing, respondent mentioned that a plastic bag had been used in the attack on Al. L., which was something Perry-Burks had not heard previously.

¶ 18 Respondent had engaged in many recommended services and had regular visits with her son for most of the time the children were in care. She did not visit her daughters because they refused visits. I.L. became uncomfortable with visiting respondent after she became hostile to the YSB caseworkers supervising a March 2023 visit. Respondent "felt that there were too many people watching her during the visit, and then she became escalated and asked everyone to leave." After that, I.L. was reluctant to visit. However, aside from the spring 2023 visit, respondent's visits with I.L. were appropriate. Respondent was also described as being aggressive with a housing advocate with whom she was working. Counsel for respondent did not object to this testimony.

¶ 19 YSB was concerned that respondent lacked the skills to be a safe parent:

"[A]lthough [respondent] has completed [relevant services], the engagement level or the authenticity of applying the skills learned seems to be lacking. Our Agency believes that she has still failed to acknowledge what happened and acknowledge the children's feelings in what happened in order to apply the skills appropriately."

Respondent's account of the incident that caused the minors to be brought into care differed from the minors' and downplayed "the intensity of what happened." Thus, respondent had not "acknowledged the violence in the home" in "the way [YSB] would ask her to."

¶ 20 YSB was also concerned that there was ongoing domestic violence between respondent and Henry L. based on respondent setting up a safety plan with another caseworker and seeking independent housing. However, Perry-Burks was not aware of any incidents of domestic violence after 2019.

¶ 21 2. *Respondent's Testimony*

¶ 22 Respondent testified that she had never denied that Henry L. had battered Al. L. or that she and Henry had a history of domestic violence. However, Henry had not been violent with

her since the start of the case. Respondent agreed that she was Henry's caregiver. (Henry used an electronic larynx and, at least for some interval, a feeding tube. He also had a "blood cancer.") Respondent's counsel asked if her extremely low IQ—an evaluator measured it as 66—interfered with her ability to care for her children. Respondent expressed doubt about the IQ measurement and stated that she could always do what she needed to do. She said that she would not again behave the way she had at the March 2023 visit, but she said the caseworkers had upset her by laughing.

¶ 23                                    3. *The Trial Court's Ruling*

¶ 24          The trial court found that respondent had failed to show reasonable concern for the children and make reasonable progress towards their return. It summarized the evidence at length, including its own findings about the battery that precipitated DCFS's filing of the original petitions. It concluded the evidence was "overwhelming" that Henry L. had reacted to Al. L's puncturing his mattress by "attempt[ing] to murder" her in front of her two siblings:

> "According to State's Exhibit 14[, the 'indicated' finding,] on July 20, 2019, [Henry L.] choked [Al. L.], then age 9, to the point she started to go blind and could not breathe.
>
>  *** He straddled her on the floor, placed both hands around her neck and choked her. She tried to kick and scream, and he squeezed tighter. He also covered her head and mouth with a plastic bag. [Respondent] and [An. L.] pulled on him, while [I.L.] watched and cried."

¶ 25          The trial court summarized a psychological evaluation conducted in August 2022 as stating that respondent:

"had no understanding of why her children were removed and have not been returned home. *** [Respondent's] cognitive limitations [made] it difficult for her to understand the circumstances of the case and her role in it[—]that [respondent] did not appear to realize that she is responsible for her children's welfare, even if *** mistreated by [Henry] and not herself."

It further found that both Henry and respondent "denied there was domestic violence in the home when the children resided in their care," but that this was not credible.

¶ 26    The trial court noted it had repeatedly communicated with the minors on the record. It deemed their statements to be credible and reliable.

¶ 27    In concluding, the trial court stated:

"I believe the parents *** have demonstrated some efforts; however, they are unable to correct or adjust their mode of thinking or parenting to create a safe environment for their children.

[Al. L., An. L.,] and even [I.L.] have voiced ongoing fear for [*sic*] their parents throughout the duration of these cases.

*** There has been no progress demonstrated by [respondent] or [Henry L.] during the time period that's alleged in the termination motion, and generally, considering the severity of the situation which gave rise to the removal of the children in July 2019 and other violence and abuse that prevents this court from returning custody of any children to either parent.

The parents still demonstrated the same aggressive behavior and lack of protective skills during the visit with [I.L.] in March 2023 as occurred in and prior to 2019.

The parents' inability to make progress in services is analogous to their failure to maintain a reasonable degree of interest, concern or responsibility as to the welfare of their children.

It is impossible for this Court to conclude, after reviewing all of the consistent evidence presented, that these children will or can return home to their parents in the near future."

¶ 28 After a hearing at which the trial court determined that it would be in the best interest of each minor to terminate the parental rights of respondent and Henry L., on October 13, 2023, the court entered orders terminating their rights.

¶ 29 This appeal followed.

¶ 30 II. ANALYSIS

¶ 31 On appeal, respondent argues first she was denied due process in that the State relied on multiple levels of hearsay to meet its burden of proof. Alternatively, she contends that, even considering the hearsay evidence, the State failed to meet its burden to show by clear and convincing evidence that she was unfit. She contends the trial court applied an inappropriate standard for reasonable progress by insisting that the only way she could make progress was to adopt DCFS's narrative of Henry L's July 2019 attack on Al. L. Respondent argues:

"[R]egardless of how [she] described the assault, her consistent engagement in services, appropriate participation in visitation (when permitted by DCFS), the lack of any violence by [her] or [Henry L.] in 4 years, and [her] participation in counseling over the entire case, all demonstrate reasonable progress by [her]."

Finally, she argues the court erred in relying at the fitness hearing on unsworn *in camera* statements by the minors.

¶ 32    The State argues that we should not address respondent's first claim. It contends she either (in effect) invited the error by stipulating to the foundation for all the documents at issue or at least forfeited the issue by failing to raise it. It further argues that the trial court's finding that respondent was unfit was not contrary to the manifest weight of the evidence. Concerning the court's finding that respondent failed to make reasonable progress towards the minors' return, it contends that the court noted multiple failures by respondent to address the violence in the home. Finally, the State contends the minors' statements were used only at the best interest portion of the proceeding.

¶ 33    In reply, respondent contends that because she never agreed to the "multi-level hearsay" in the documents she agreed to admit, she did not invite error. She does not suggest that she preserved her objections by making timely objections to the trial court's admission of the evidence. She asks that we address her claim that the court improperly relied on hearsay as second-prong plain error.

¶ 34    We conclude that respondent forfeited her claim that the trial court improperly admitted and relied on multi-level hearsay. Moreover, these claims are not subject to plain-error review. We conclude that respondent has not shown that the unfitness finding was against the manifest weight of the evidence. Finally, she has not shown that the court's mention of the children's *in camera* statements during its summary of the evidence amounted to improper consideration of those statements.

¶ 35             A. Respondent Forfeited Her Hearsay-Based Claims

¶ 36    Respondent forfeited her claims that the trial court improperly admitted and relied on multi-level hearsay in the State's exhibits by failing to object to use of the hearsay portions of those exhibits. To preserve an evidentiary issue in a termination-of-parental-rights case for

appellate review, a party must object at the hearing. *In re M.W.*, 232 Ill. 2d 408, 430, 905 N.E.2d 757, 772 (2009). The requirements for preserving a claim of error in a termination proceeding are the same as those in a criminal case, except that a respondent in a termination proceeding, unlike a defendant in a criminal case, need not raise the claimed error in a postjudgment motion. *Id.* Respondent never objected to the State's introduction of documents containing potentially inadmissible hearsay or the court's consideration of that hearsay and thus forfeited all claims based on the admission of that hearsay.

¶ 37    Indeed, respondent arguably *agreed* to the consideration of *all* information in the State's exhibits when she stipulated to the existence of a foundation for those exhibits. If this is so, respondent's claim that the trial court improperly considered inadmissible hearsay is barred under the invited error rule. Under the invited error rule, a party is, in effect, estopped from raising as error on appeal actions he or she had requested in the trial court. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 33, 969 N.E.2d 359.

¶ 38    Further, respondent's evidentiary claim is not reviewable as plain error. The supreme court has stated:

"[T]he plain error rule allows reviewing courts discretion to review forfeited errors under two alternative prongs: (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Moon*, 2022 IL 125959, ¶ 20, 215 N.E.3d 58.

The supreme court equates second-prong plain error with " 'structural error' "—error that is presumed to be prejudicial. *Id.* ¶ 28. But errors, including constitutional errors, are presumed to be subject to harmless error review—that is, they are presumed to be nonprejudicial. *Id.* We find no authority for the proposition that the admission of hearsay, even when that admission constitutes constitutional error, is ever structural error.

¶ 39                          B. The Trial Court's Unfitness Determination

Was Not Contrary to the Manifest Weight of the Evidence

¶ 40          Respondent argues that, even considering the hearsay evidence to which she objects, the State failed to prove that she was unfit by clear and convincing evidence. We here address the findings of unfitness based on respondent's failures to make reasonable progress during the three nine-month periods specified by the State. "[A]ny one ground [for finding unfitness], properly proven, is sufficient to enter a finding of unfitness." (Emphasis omitted.) *In re C.W.*, 199 Ill. 2d 198, 210, 766 N.E.2d 1105, 1113 (2002). Thus, a reviewing court should affirm a trial court's finding of unfitness if *any* ground on which the court found the respondent unfit is sustainable (see, *e.g.*, *In re J.O.*, 2021 IL App (3d) 210248, ¶ 33, 195 N.E.3d 837) and we need not address every basis on which the court found respondent unfit to affirm the finding of unfitness. We conclude the evidence was sufficient to support the court's finding that respondent failed altogether to make progress in understanding her children's need for acknowledgment of the harmfulness of their household environment.

¶ 41                          1. *The Standard of Review*

¶ 42          "A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48, 187 N.E.3d 763. "A trial court's decision is against the manifest weight of the evidence only if the opposite

conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." (Internal quotation marks omitted.) *In re N.B.*, 2019 IL App (2d) 180797, ¶ 30, 125 N.E.3d 444. A reviewing court "give[s] deference to the trial court as the finder of fact" and does not "substitute [its] judgment for that of the trial court on the credibility of witnesses, the weight given the evidence, or inferences drawn from the evidence." *In re A.W.*, 231 Ill. 2d 92, 104, 896 N.E.2d 316, 324 (2008).

¶ 43                    2. *The Law Regarding Reasonable Progress*

¶ 44        The State must prove unfitness as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. Section 1(D)(m)(ii) of the Adoption Act defines an unfit person as a parent who fails to make "reasonable progress toward the return of the child" during any nine-month period following an adjudication of neglect or abuse. 750 ILCS 50/1(D)(m)(ii) (West 2022). The Illinois Supreme Court has held:

> "The benchmark for measuring a parent's reasonable progress under section 1(D)(m) of the Adoption Act encompasses compliance with the service plans and [trial] court's directives in light of the condition that gave rise to the removal of the child and other conditions which later become known that would prevent the court from returning custody of the child to the parent." *In re K.P.*, 2020 IL App (3d) 190709, ¶ 36, 157 N.E.3d 493 (citing *In re C.N.*, 196 Ill. 2d 181, 216-17, 752 N.E.2d 1030, 1050 (2001)).

¶ 45        Similarly, this court has defined "reasonable progress" as follows:

> " 'Reasonable progress' is an objective standard which exists when the [trial] court, based on the evidence before it, can conclude that the progress being made by a

parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991).

See *K.P.*, 2020 IL App (3d) 190709, ¶ 36 ("Reasonable progress exists when the trial court can conclude that the progress *** [is] of such a quality that the trial court will be able to order the minor returned to parental custody in the near future.").

¶ 46                    3. *The Evidence of Unfitness Was Sufficient*

¶ 47          Here, the trial court found respondent unfit on all grounds alleged, including failure to make reasonable progress towards the minors' return during all three time periods set out in the petition. It found that serious violence occurred in the home when the children were present. It found that respondent and Henry L. were "unable to correct or adjust their mode of thinking or parenting to create a safe environment for their children" and that the children remained fearful of returning to their parents. This was the core of its grounds for finding that respondent both failed to maintain a reasonable degree of concern for the children's welfare and failed to make reasonable progress.

¶ 48          The trial court's ruling was based on respondent's failure to grasp how the children's understanding of the choking incident, and their understanding of incidents of violence that preceded it, affected them. Although respondent argues that the court overstated the intensity of the violence in her home, she does not dispute that the violence was serious. Moreover, the

- 13 -

record was replete with evidence, such as the psychological evaluation, that supported the conclusion that respondent lacked insight into how the violence was harmful to her children. Thus, the State offered sufficient evidence to support the finding of unfitness.

¶ 49          4. *The Trial Court Did Not Apply an Inappropriate Standard for*

*Reasonable Progress*

¶ 50          Respondent argues that the trial court applied an unreasonable standard for reasonable progress in that it made respondent's acceptance of DCFS's description of the events that resulted in the children's removal the sole measure of progress. We disagree.

¶ 51          The trial court stated that both respondent and Henry L. were "unable to correct or adjust their mode of thinking or parenting to create a safe environment for their children." Nothing the court said suggested it required respondent to accept any specific set of facts. It did, however, make clear that to support her children, respondent would have to be able to acknowledge *consistently* that (1) Henry's attack on Al. L. involved serious violence, (2) there had been serious violence in the household prior to the attack, and (3) she had a duty to protect her children from the effects of the violence in the household.

¶ 52          Respondent does not deny the existence of serious violence in the household. Instead, she challenges the trial court's description of Henry L.'s attack on Al. L. as attempted murder, suggesting that the court expected her to accept that description. We find nothing in the court's comments to support that suggestion. The court's evaluation of the severity of Henry's violence bore on Henry's fitness. However, the record suggests that at no other time than the court's oral ruling was Henry's attack on Al. L. described as attempted murder. The court was thus emphasizing its view of the seriousness of the attack, not stating the position of DCFS or YSB. It could not have plausibly expected respondent to have prospectively adopted a position for which

no one had advocated.

¶ 53          C. Respondent Has Not Shown That the Trial Court

Relied on the Children's *in Camera* Statements at the Fitness Hearing

¶ 54          Respondent argues that the trial court erred in making use of unsworn *in camera* statements by the children at the fitness hearing. She contends the only proper use of such statements is during best-interest proceedings to determine the children's preferences. We agree with respondent that the court *discussed* the statements at the fitness portion of the proceeding, noting that the statements were credible. However, our review of the court's oral finding of unfitness does not show any point at which the *in camera* statements informed its analysis. The court's comments included a discursive review of the material before it. Its mention of the existence of the *in camera* statements thus does not imply that it gave any weight to those statements during the fitness portion of the proceedings. Respondent does not provide any examples of how the statements affected the court's fitness analysis, and we cannot find any in the record. There is thus no basis to conclude that the court placed any weight on the *in camera* statements during the fitness portion of the proceeding.

¶ 55          III. CONCLUSION

¶ 56          For the reasons stated, we affirm the trial court's judgment.

¶ 57          Affirmed.