NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241246-U

NOS. 4-24-1246, 4-24-1247 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 10, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Chas. M. and Chasi. M., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | Nos. 21JA291 |
| v. | ) | 22JA96 |
| Daniel M., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Doherty and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, finding (1) respondent forfeited his argument that the trial court erred by not recusing itself from the termination proceedings and (2) the court's unfitness determination was not against the manifest weight of the evidence.

¶ 2     Respondent, Daniel M., appeals the trial court's order terminating his parental rights as to his two minor children, Chas. M. (born in March 2021) and Chasi. M. (born in May 2022). (The court also terminated the parental rights of the minors' mother, Shanteri L., who is not a party to this appeal.) On appeal, respondent argues (1) the court erred by not recusing itself from the termination proceedings and (2) the court's unfitness finding was against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                A. Neglect Proceedings

¶ 5                                    1. *Chas. M.*

¶ 6           In July 2021, the State filed a petition for adjudication of wardship of Chas. M., alleging that the minor was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)) due to being in an environment injurious to his welfare. Relevant to respondent, the State alleged (1) Chas. M.'s umbilical cord tested positive for cocaine and tetrahydrocannabinol (THC), (2) respondent tested positive for THC in April 2021 and later failed to appear at another drug test, (3) respondent and Shanteri had a history of domestic violence, (4) respondent had a history of violent behavior toward other individuals, and (5) respondent had two convictions for domestic battery, three convictions for unlawful possession of cannabis, two convictions for criminal trespass to a residence, and one conviction for battery. Following a shelter care hearing, the trial court entered an order placing temporary custody of the minor with the Illinois Department of Children and Family Services (DCFS).

¶ 7           In October 2021, the trial court adjudicated Chas. M. neglected. The same day, the court entered a dispositional order finding respondent unfit and unwilling to care for the minor, making the minor a ward of the court, and granting guardianship and custody to DCFS.

¶ 8                                    2. *Chasi. M.*

¶ 9           In May 2022, the State filed a petition for adjudication of wardship of Chasi. M., alleging that the minor was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2022)) due to being in an environment injurious to her welfare. Relevant to respondent, the State alleged (1) the minor's sibling, Chas. M., was adjudicated neglected and

respondent had not been restored to fitness in that case and (2) respondent and Shanteri had a history of domestic violence. Following a shelter care hearing, the trial court entered an order placing temporary custody of the minor with DCFS.

¶ 10 In July 2022, respondent stipulated to the prior finding of unfitness and to not completing the services which would restore him to fitness. The trial court subsequently adjudicated Chasi. M. neglected and entered a dispositional order finding respondent unfit, making the minor a ward of the court, and granting guardianship and custody to DCFS.

¶ 11 B. Permanency Review Orders

¶ 12 Following a July 2023 permanency review hearing, the trial court entered an order maintaining Chas. M.'s goal as substitute care pending the court's decision on parental rights. The order changed Chasi. M.'s goal to substitute care pending the court's decision on parental rights. The order further stated: "STATE TO CONSIDER FILING A [TERMINATION OF PARENTAL RIGHTS (TPR) PETITION]."

¶ 13 On January 18, 2024, the caseworker filed a permanency review report. In the section titled "Worker Assessment," the report stated: "The current goal in this case is (24) substitute care pending court decision [on parental rights]. This worker has followed up with the Peoria State's Attorney's Office and they have indicated that they are in the process of filing a termination of parental rights petition." Following a January 23, 2024, permanency review hearing, the trial court entered an order stating: "The court orders the following parties to do the following: STATE TO FILE TPR [PETITION] WITHIN 30 DAYS."

¶ 14 The day after the permanency review hearing, the State sent an *ex parte* e-mail to the trial court. The e-mail subject was titled "TPRs," and the body of the e-mail consisted of a quotation from Justice Steigmann's concurrence in *In re A.T.*, 197 Ill. App. 3d 821, 835 (1990)

(Steigmann, J., specially concurring): " 'Of course, when a judge has indicated there is a need for a petition to terminate parental rights to be filed, that judge must thereafter recuse himself or herself from any proceedings on that petition once it is filed.' " In response, the court e-mailed the State: "What's the purpose of this email?" The following day, the court entered an order advising the State "that further *ex parte* communications will not be permitted or accepted."

¶ 15                           C. Termination of Parental Rights

¶ 16          In February 2024, the State filed separate petitions to terminate respondent's parental rights as to both minors. The State alleged respondent was unfit because he failed to make reasonable progress toward the return of the minors within the relevant nine-month period following the neglect adjudication, namely, November 19, 2022, to August 19, 2023 (750 ILCS 50/1(D)(m)(ii)) (West 2022)).

¶ 17                           1. *Fitness Hearing*

¶ 18          The trial court conducted a two-day joint fitness and best-interest hearing, beginning in July 2024 and ending in August 2024. The court admitted four exhibits into evidence: (1) respondent's certified mental health records from Lutheran Social Services of Illinois (LSSI), (2) respondent's certified domestic violence class records from Richardson Counseling & Wellness Center, (3) certified visitation records from LSSI, and (4) respondent's certified mental health records from John R. Day Psychological Associates. The court also took judicial notice of the pleadings, orders, and motions in both minors' cases, including the dispositional orders and permanency review orders.

¶ 19          Cheyenne Denoyer, an LSSI caseworker, testified she was assigned to this case from November 2022 to August 2023. Under the service plan, respondent was required to complete the following objectives: (1) parenting classes, (2) mental health counseling, (3) domestic violence

classes, (4) obtain stable housing and a legal source of income, and (5) visitation with the minors.

¶ 20        Denoyer testified respondent self-reported he had stable housing during the relevant period. However, Denoyer's supervisor did not permit her to conduct home visits due to gun violence issues between respondent and Shanteri. Denoyer stated respondent's employment was inconsistent. From November 2022 to February 2023, respondent was unemployed. From February 2023 to April 2023, he was employed at Rivian, and from April 2023 to June 2023, he was employed at Caterpillar. Respondent was then unemployed from June 2023 until the end of the relevant period. Denoyer described respondent's communication with her as "on and off." Respondent changed his phone number multiple times during the relevant period without notifying the agency. There were also times when Denoyer could only reach respondent by e-mail or by contacting Shanteri to get ahold of him.

¶ 21        Respondent, while initially hesitant, signed the consents to allow Denoyer to communicate with his service providers. Respondent completed his intake packet in February 2023 and started domestic violence classes the following month. Between March 2023 and July 2023, respondent missed at least three classes. He stopped attending domestic violence classes after August 1, 2023, when the agency would no longer pay for services due to the goal change in Chas. M.'s case. However, Denoyer encouraged respondent to resume services on his own. She noted respondent did not formally report being in a relationship with Shanteri, despite indications there was an ongoing relationship between them. Denoyer found this concerning due to previous domestic violence issues.

¶ 22        Respondent was referred for mental health counseling through LSSI, but he never attended any sessions. LSSI records indicated the staff called and sent a letter to respondent to schedule his first session, but he never responded. Respondent was unsuccessfully discharged or

removed from the waitlist on three occasions due to lack of contact.

¶ 23 Respondent missed 9 of 29 visits with the minors due to his work schedule or illness. Denoyer received verification from respondent for work-related cancellations, but she never received a doctor's note for illness-related cancellations. Chasi. M.'s visits remained weekly during the relevant period. Chas. M.'s visits were initially weekly but were reduced to monthly after the goal change in his case. The visits respondent did attend were overall "a very positive experience for the kids," and he behaved appropriately and displayed a bond with the minors. Respondent did not have reliable transportation, so Denoyer provided him with monthly bus passes. Visitation was never increased and remained supervised due to respondent's inconsistent attendance and communication.

¶ 24 Respondent did not inform Denoyer of any legal troubles or arrests during the relevant period. However, she was aware of an arrest in early August 2023, where respondent was held in the Peoria County jail for a couple of days. After Denoyer's testimony, the State asked the trial court to take judicial notice of respondent's criminal case, resulting in his arrest pursuant to a warrant on August 5, 2023, where the charge was driving without a license.

¶ 25 Respondent completed his parenting classes through Crittenton Centers. However, because he stopped regularly attending visits with the minors, he did not demonstrate any learned skills from the classes. Denoyer opined the minors were no closer to returning home at the end of the relevant period, as respondent had not completed his court-ordered services.

¶ 26 Respondent testified on his own behalf. He stated he lived with his parents during the entire relevant period, but Denoyer never visited the home. Respondent asserted the gun violence incident occurred at Shanteri's apartment and he never lived there. He maintained he had no ongoing relationship with Shanteri except for coparenting the minors. Respondent alleged

Denoyer refused to contact him, so he relied on Shanteri to keep him updated on the cases. He indicated he worked for his father's landscaping company during the periods he was otherwise unemployed. Respondent asserted he did not complete mental health counseling due to issues related to the waiting list and paperwork. He stated he did not complete the remaining domestic violence classes because he could not afford to pay out-of-pocket after the agency stopped covering the cost of the classes.

¶ 27        The trial court found respondent unfit by clear and convincing evidence for his failure to make reasonable progress toward the return of the minors during the relevant nine-month period. The court's reasoning was based primarily on respondent's failure to complete the domestic violence services and mental health counseling.

¶ 28                              2. *Best-Interest Hearing*

¶ 29        The trial court immediately proceeded to the best-interest portion of the hearing. The court indicated it received and reviewed the best-interest report.

¶ 30        Jarret Witmer, an LSSI caseworker, testified he was assigned to these cases in January 2024. During foster home visits, Witmer observed the minors had a good bond with their respective foster parents. Witmer found the foster homes were safe and appropriate environments for the minors. Witmer stated the foster parents had committed to permanency, and he opined it was in the minors' best interest to terminate respondent's parental rights.

¶ 31        Respondent testified he did not remember when he last visited with the minors, but it was sometime during the prior year. Respondent maintained his visitation was disrupted due to work schedule conflicts and communication issues with the agency. Respondent believed it was in the minors' best interest to have a relationship with him and to be in his care. He noted his two older children (ages six and seven) were in his care and that he was a good father.

¶ 32    The trial court found termination of respondent's parental rights was in the best interest of both minors.

¶ 33    This appeal followed.

¶ 34                    II. ANALYSIS

¶ 35    On appeal, respondent argues (1) the trial court erred by not recusing itself from the termination proceedings and (2) the court's unfitness determination was against the manifest weight of the evidence. We note respondent does not challenge the best-interest finding on appeal.

¶ 36                    A. Recusal

¶ 37    Respondent first argues the trial court erred by not recusing itself from the termination proceedings after the court allegedly ordered the State to file the termination petitions.

¶ 38    To preserve an issue for review in a proceeding conducted under the Juvenile Court Act, a respondent must make a contemporaneous objection in the trial court. *In re M.W.*, 232 Ill. 2d 408, 430 (2009). Here, respondent forfeited this issue by failing to file a motion for substitution of judge or otherwise raising this issue with the court. In his appellate brief, respondent does not acknowledge his forfeiture of this issue and does not ask that we review this matter for plain error. See *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 51 (applying the plain error rule in a proceeding under the Juvenile Court Act). As such, respondent has also forfeited this argument on appeal. *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010).

¶ 39    Forfeiture aside, even if we were to review for plain error, the record on appeal is insufficient to address respondent's argument. Respondent insists the trial court *sua sponte* ordered the State to file the termination petitions at the January 23, 2024, permanency review hearing. However, respondent has failed to include a report of proceedings from this hearing in the record. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984) ("[A]n appellant has the burden to present a

- 8 -

sufficiently complete record of the proceedings at trial to support a claim of error."). Moreover, the record indicates the State began to consider filing the termination petitions as early as July 2023, and on January 18, 2024, the minors' caseworker filed a permanency review report which noted the State was "in the process of filing a termination of parental rights petition." "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* at 392. Absent a sufficient appellate record, we presume the trial court acted in conformity with the law to continue presiding over the termination proceedings.

¶ 40 Finally, respondent also raises this issue as an ineffective assistance of counsel claim, arguing trial counsel was ineffective for failing to object to the trial court presiding over the termination proceedings. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires an appellant's brief to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited." In his two-sentence argument, the only case respondent cites is *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 41, for the proposition that parents have a statutory right to the effective assistance of counsel in termination proceedings. Respondent does not explain how his attorney's actions fell below an objective standard of reasonableness, nor how a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, respondent has also forfeited his ineffective assistance claim on this issue.

¶ 41 B. Unfitness

¶ 42 Respondent next contends the trial court's order finding him unfit was against the manifest weight of the evidence.

¶ 43 In a proceeding to terminate parental rights, the State must prove the parent is unfit

by clear and convincing evidence. *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 50. The trial court in these cases found respondent was unfit based on his failure to make reasonable progress toward the return of the minors during the relevant nine-month period, namely, November 19, 2022, to August 19, 2023 (750 ILCS 50/1(D)(m)(ii) (West 2022)). Our supreme court has held the benchmark for measuring a parent's reasonable progress includes

> "the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001).

Similarly, this court has defined "reasonable progress" as

> "an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 44 A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48. A court's finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent. *In re D.D.*, 196 Ill. 2d 405, 417 (2001).

¶ 45 Here, the evidence at the fitness hearing showed that, during the relevant period, respondent failed to make demonstrable progress toward the return of the minors. The only court-ordered service respondent completed was the parenting classes. Respondent never started mental health counseling, despite repeated attempts by the agency to contact him, missed almost a third of the supervised visits with the minors, and was arrested in August 2023, which he did not report to his caseworker. As to domestic violence services, respondent missed several classes and stopped attending after August 1, 2023. Respondent also did not maintain regular contact with Denoyer, who could only reach him through Shanteri during the periods when he did not return Denoyer's phone calls or e-mails. This was particularly concerning, as respondent and Shanteri had a history of domestic violence and, according to respondent, were supposedly no longer in a relationship.

¶ 46 Respondent attempts to justify his noncompliance with the service plan by alleging LSSI failed to make reasonable efforts to assist him in completing his services. Respondent's argument primarily rests on the fact the agency ceased paying for his services after the goal was changed to substitute care pending the court's decision on parental rights for both minors. Respondent fails to cite any authority, and we are not aware of any, which requires DCFS or its designated agencies to pay for a parent's court-ordered services once the goal is changed to substitute care pending the court's decision on parental rights. Despite respondent's contention, the record clearly demonstrates Denoyer and LSSI made many efforts to engage respondent in his services, such as providing him monthly bus passes, accommodating his work schedule for visitations, and consistently attempting to maintain contact with him, despite his lack of cooperation. Moreover, LSSI stopped paying for services only after the goal changed in July 2023, but the relevant nine-month period was from November 2022 to August 2023. Respondent does not explain how LSSI ceasing payment one month before the end of the nine-month period kept

him from complying with the service plan during the prior eight months.

¶ 47        On this record, respondent failed to make sufficiently demonstrable progress on his services and was no closer to having the minors returned to his care by the end of the relevant nine-month period. *L.L.S.*, 218 Ill. App. 3d at 461. Accordingly, the trial court's determination of unfitness was not against the manifest weight of the evidence.

¶ 48                          III. CONCLUSION

¶ 49        For the reasons stated, we affirm the trial court's judgment.

¶ 50        Affirmed.