NOTICE
Decision filed 07/25/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250148-U

NOS. 5-25-0148, 5-25-0149 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* KEIRA L. and MATTHEW L. JR., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Montgomery County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 21-JA-26, 21-JA-27 |
| | ) | |
| Matthew L., | ) | Honorable |
| | ) | Nathan A. Frisch, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice McHaney and Justice Moore concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's finding that the respondent father was unfit and the trial court's order terminating the respondent's parental rights are affirmed where the trial court's findings were not against the manifest weight of the evidence and where the respondent failed to establish that he received ineffective assistance of counsel. Additionally, we lack jurisdiction to review the trial court's September 7, 2022, adjudicatory findings, and September 28, 2022, dispositional order.

¶ 2     The respondent, Matthew L., was found to be an unfit parent and his parental rights were terminated as to his minor children, Keira L. (born May 4, 2017) and Matthew L. Jr. (born April 15, 2019), by the circuit court of Montgomery County. The respondent appeals following the trial court's fitness findings entered on September 20, 2024, and the trial court's entry of the order terminating his parental rights entered on December 18, 2024, in case Nos. 21-JA-26 and 21-JA-

1

27. The respondent filed a timely notice of appeal in each case, and these cases were consolidated for our review.[1]

¶ 3                                    I. BACKGROUND

¶ 4      On November 15, 2021, the State filed petitions for adjudication of wardship, alleging that the children were neglected minors under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)) in that their environment was injurious to their welfare. Specifically, the allegations in the petition were based on the respondent's tangential speech, the condition of the home, a lack of hygiene, and the parents sleeping during the day. The petitions also noted that due to reports of substance use and domestic violence, the respondent and Brittany L., the children's mother, were asked to submit to random drug screens. However, they failed to appear twice and declined once in person. Further, the petitions alleged that there was a failure to appropriately manage the diabetic care of a minor sibling, who is not part of this appeal, because the respondent is not her biological father.

¶ 5      Also on November 15, 2021, the trial court entered a temporary custody order, placing temporary custody of the children with the Illinois Department of Children and Family Services (DCFS). On November 16, 2021, the State filed an amended petition for adjudication of wardship in case No. 21-JA-27, which included an additional allegation of neglect regarding Matthew L. Jr. The petition noted that, on or about November 11, 2021, it was observed that Matthew L. Jr. had bruising on his neck and two burn marks on his arm.

¶ 6      On April 20, 2022, the trial court held an adjudicatory hearing, at which the respondent was present and was appointed counsel. That same day, the State amended the petitions in both

---

[1]The parental rights of the children's mother, Brittany L., were also terminated. However, she is not a party to this appeal.

cases by crossing out the allegation regarding the parents' failure to manage the minor sibling's diabetic care. On September 7, 2022, the trial court held an adjudicatory hearing. The respondent appeared via Zoom because he was in the custody of the Illinois Department of Corrections. After hearing the testimony presented at the hearing, the trial court found, by a preponderance of the evidence, that the children were neglected due to an environment that was injurious to their welfare. The trial court's finding was based on the unclean nature of the home, the injuries suffered by the minors, and the parents' ongoing drug use.

¶ 7      Thereafter, the respondent failed to appear at the dispositional hearing that was held on September 28, 2022, and the trial court found that he was in default. In the written dispositional order, the trial court found that the respondent was unfit, unable, and unwilling, for reasons other than financial circumstances alone, to care for, protect, train, educate, supervise, or discipline the minor children and that placement with him was contrary to the children's health, safety, and best interests.

¶ 8      On September 6, 2023, the trial court held a permanency hearing, at which the respondent appeared with appointed counsel. The respondent was in the custody of the Montgomery County jail at the time. That same day, the trial court entered a written permanency order, changing the permanency goal to substitute care pending a determination on termination of parental rights. On February 21, 2024, the State filed petitions to terminate the respondent's parental rights, asserting that the respondent was unfit to have the children under section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2022)) in that he failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare; under section 1(D)(m)(i) of the Adoption Act (*id.* § 1(D)(m)(i)) in that he failed to make reasonable efforts to correct the conditions that that were the basis for the children's removal from the home during any nine-month time period after the

3

adjudication of neglect; and under section 1(D)(m)(ii) of the Adoption Act (*id.* § 1(D)(m)(ii)) in that he failed to make reasonable progress toward the children's return during any nine-month time period after the adjudication of neglect.

¶ 9     On August 7, 2024, the trial court held the fitness hearing. Following the hearing, the trial court entered a written order on September 20, 2024, finding that the respondent was unfit in that he failed to maintain a reasonable degree of interest, concern, and responsibility as to the children's welfare and failed to make reasonable efforts to correct the conditions that were the basis for the children's removal from the home. However, the trial court determined that it could not find that the respondent failed to make reasonable progress during the date ranges alleged by the State.

¶ 10     On November 20, 2024, the trial court held the best-interests hearing. Thereafter, on December 18, 2024, the trial court entered a written order finding that it was in the children's best interests to terminate the respondent's parental rights. On December 19, 2024, the trial court entered a written order terminating the respondent's parental rights. On December 20, 2024, the trial court held a hearing, at which the trial court admonished the respondent as to his rights to appeal the termination order. At this hearing, the trial court granted the respondent's request to allow his counsel to withdraw and to proceed *pro se*. On January 13, 2025, the respondent filed *pro se* motions to reconsider. Following a hearing held on February 7, 2025, the trial court entered a docket entry, denying the respondent's *pro se* motions to reconsider and appointing the respondent counsel for his appeal. The respondent now appeals.

¶ 11                                     II. ANALYSIS

¶ 12                                     A. Jurisdiction

¶ 13     The State initially asserts that we lack jurisdiction to consider this appeal due to defects in the respondent's notice of appeal. Specifically, the respondent's notice of appeal did not identify

4

which orders he was appealing, as the notice merely stated that he was appealing "[a]ll decisions adverse to the father" and "all adverse findings of the father." The State argues that, since the respondent failed to list the dates of the judgments he wished to appeal from, and did not file an amended notice of appeal, this court lacks jurisdiction and should dismiss the appeal. In response, the respondent notes that there were only two adverse orders against him that this court can review, the dispositional order and the order terminating his parental rights. Also, the respondent contends that this court has jurisdiction to address his claims as it was obvious from the notice of appeal that he intended to appeal the dispositional order. He further argues that the adjudication of neglect can also be reviewed as it was a step in the procedural progression leading to the dispositional order.

¶ 14    Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) provides that the notice of appeal must specify the judgment, the part of the judgment, or the other orders appealed from, and the relief sought from the reviewing court. A proper notice of appeal is the jurisdictional step that initiates appellate review. *In re Ja. P.*, 2021 IL App (2d) 210257, ¶ 20. The notice of appeal confers jurisdiction on an appellate court to consider only the judgments or parts of the judgments specified in the notice of appeal. *Id.*; *People v. Ratliff*, 2024 IL 129356, ¶ 17. However, a notice of appeal is to be liberally construed and will confer jurisdiction on the appellate court if the notice, when considered as a whole, fairly and adequately sets out the judgment being challenged and the relief sought so that the opposing party has notice of the nature of the appeal. *In re Jamari R.*, 2017 IL App (1st) 160850, ¶ 39; *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). Thus, if the deficiency in the notice is one of form, and not substance, and the opposing party is not prejudiced, failure to strictly comply with the form of the notice is not fatal. *General Motors Corp.*, 242 Ill. 2d at 176.

¶ 15    Construing the notice of appeal liberally, we conclude that we have jurisdiction to review the trial court's fitness findings and order terminating the respondent's parental rights even though the respondent did not list the dates of those orders in his notice of appeal. The notice of appeal, which indicated that the respondent was appealing "all decisions adverse" to him and "all adverse findings of the father," gave the appellee notice that the respondent was appealing the fitness findings and termination order. Those orders were adverse to him, and the time for appealing them had not passed.

¶ 16    However, the notice of appeal did not provide the State with sufficient notice that the respondent was also appealing the September 7, 2022, adjudicatory findings, and the September 28, 2022, dispositional order. Unlike the fitness findings and termination order, the time for appealing the adjudicatory findings and the dispositional order had long passed. To appeal the entry of the September 28, 2022, dispositional order, which is a final order, the respondent should have filed a notice of appeal within 30 days of the entry of that order or a motion to file a late notice of appeal in regard to that order. See *In re S.P.*, 2019 IL App (3d) 180476, ¶ 47. Also, appealing a dispositional order is the proper vehicle for challenging an adjudicatory finding of abuse or neglect. *In re Ja. P.*, 2021 IL App (2d) 210257, ¶ 23. Even when a respondent claims that he received ineffective assistance of counsel during the neglect proceedings, this court lacks jurisdiction to consider any alleged errors in the adjudicatory process in an appeal from an order terminating parental rights. *Id.* Thus, we lack jurisdiction to directly review the adjudicatory and dispositional orders.

¶ 17    Notwithstanding the respondent's failure to timely appeal these orders, the respondent claims that we have jurisdiction because there was no record that the dispositional order was actually served on him in accordance with Illinois Supreme Court Rule 12 (eff. July 1, 2017).

6

Thus, he contends that, since the record did not show that the dispositional order was served on him, the trial court lacked personal jurisdiction over him, and he should be permitted to collaterally challenge the adjudicatory findings and the dispositional order. In making this argument, he notes that, if a court lacks subject matter jurisdiction over the matter or personal jurisdiction over the parties, any order entered in the matter is void *ab initio* and may be attacked at any time. See *In re M.W.*, 232 Ill. 2d 408, 414 (2009). We find that the respondent's arguments lack merit.

¶ 18    On November 15, 2021, the petitions for adjudication of wardship were filed regarding the minor children. The respondent does not contend that he was not properly served with these petitions. Also, he was present at some of the proceedings following the filing of the petitions for adjudication of wardship, including the September 7, 2022, adjudicatory hearing; he was appointed counsel; and he never argued that the trial court lacked personal jurisdiction over him. Thus, he consented to the trial court's jurisdiction over him by appearing and participating in the proceedings. See *id.* at 426 (a respondent may consent to personal jurisdiction by his appearance).

¶ 19    At the beginning of the September 28, 2022, dispositional hearing, the trial court informed counsel that the respondent and Brittany called the clerk's office to say that they would not be attending the hearing due to transportation issues. Thus, the respondent had actual notice of the dispositional hearing and an opportunity to appear and participate in the proceedings. After being informed that the parents would not be at the hearing, the State requested that a dispositional order consistent with the dispositional report be entered in their absence. The respondent's counsel objected to the entry of a default order. However, the guardian *ad litem* indicated that, if the court thought it was appropriate to proceed without the parents, then she would agree. She noted that a dispositional order was needed and that the tenor of the dispositional report was that the parties had not been fully engaged or had not accomplished anything since their last court appearance.

7

¶ 20    The trial court then questioned the caseworker as to whether the parents contacted her about their transportation issues. The caseworker indicated that the parents had not contacted her, even though she had had previous conversations with the parents about them contacting her ahead of time if they needed transportation assistance. The trial court then found that the parents were in default and entered the dispositional order. In the written order, the trial court noted that notice of the hearing had been given to both parents, that they had failed to appear, and that they were found in default. The September 28, 2022, docket entry provided that a copy of the dispositional order was given to the attorneys by e-service. Thus, this order was provided to the respondent's appointed counsel.

¶ 21    A court may grant a default judgment in termination proceedings when any parent who has been properly served fails to appear. 705 ILCS 405/2-21(1) (West 2022). However, in some circumstances, the court's entry of the default judgment may raise due process concerns. See *In re Aa. C.*, 2021 IL App (1st) 210639, ¶ 12 (procedures involving the termination of parental rights must not violate a parent's due process rights). Accordingly, the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), is used to determine whether a respondent received procedural due process in these proceedings. *In re D.T.*, 212 Ill. 2d 347, 362 (2004). Although the respondent is arguing that his due process rights were violated at the dispositional hearing and/or by the entry of the default dispositional order, he does not cite or conduct a due process analysis under *Mathews*. Thus, by not making this argument in his appellate brief, he has forfeited it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 22    The respondent contends that we should review the findings made at the adjudication hearing as well as the default dispositional order, because his appointed counsel rendered ineffective assistance of counsel by not filing a motion attacking the default judgment or by not

appealing these orders. In addition, he argues that a challenge to the default judgment would have been meritorious as his trial counsel was ineffective for failing to make certain evidentiary objections at the adjudicatory hearing and failing to argue that the State had not proven the allegations in the petitions for adjudication by a preponderance of the evidence. However, even if we accepted the respondent's arguments, we would still be without jurisdiction to review the findings made at the adjudicatory hearing and the entry of the default dispositional order because, as previously explained, his notice of appeal did not identify the dispositional order as an order that he was appealing. See Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017) (providing that the notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court"). Thus, we conclude that we do not have jurisdiction to review the adjudicatory findings or the default dispositional order entered against the respondent. However, since we have jurisdiction to review the fitness findings and the best-interests order entered by the trial court, we will now consider the respondent's arguments concerning those proceedings.

¶ 23                     B. Termination of Parental Rights

¶ 24     Termination of parental rights proceedings are governed by the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2022)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2022)). *In re D.T.*, 212 Ill. 2d 347, 352 (2004). A petition to terminate parental rights is filed under section 2-29 of the Juvenile Court Act, which delineates a two-step process to terminate parental rights involuntarily. 705 ILCS 405/2-29(2) (West 2022). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). 705 ILCS 405/2-29(2), (4) (West 2022); *In re C.W.*, 199 Ill. 2d 198, 210 (2002). If the court makes a finding of

9

unfitness, the court then considers whether it is in the minor children's best interests for the parental rights to be terminated. *Id.*

¶ 25    A finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006). A finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent from the record. *Id.* The circuit court's finding of unfitness is given great deference because it is in the best position to make factual findings and credibility assessments. *In re Tiffany M.*, 353 Ill. App. 3d 883, 889 (2004). This court, therefore, will not reweigh the evidence or reassess the credibility of the witnesses. *In re M.A.*, 325 Ill. App. 3d 387, 391 (2001). Each case concerning parental fitness is unique and must be decided on the particular facts and circumstances presented. *In re Daphnie E.*, 368 Ill. App. 3d at 1064. In addition, because each of the statutory grounds of unfitness is independent, the circuit court's finding may be affirmed where the evidence supports a finding of unfitness as to any one of the alleged grounds. *In re C.W.*, 199 Ill. 2d at 217.

¶ 26    Here, the trial court found the respondent unfit on the following grounds: he failed to maintain a reasonable degree of interest, concern, and responsibility as to the children's welfare; and he failed to make reasonable efforts to correct the conditions that were the basis for the children's removal during any nine-month period following the adjudication of neglect.

¶ 27    Section 1(D)(b) of the Adoption Act provides that a parent may be found unfit for "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2022). Since this language is disjunctive, the fitness finding can be based on any one of these elements—interest, concern, or responsibility. *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004). In determining whether a parent has shown reasonable interest, concern,

or responsibility, the court should focus on the reasonableness of the parent's efforts and not necessarily on the success of those efforts. *In re M.J.*, 314 Ill. App. 3d 649, 656 (2000).

¶ 28    In addition, the trial court should consider any circumstances that made it difficult for the parent to show interest, concern, or responsibility for the children's well-being, such as transportation issues or the parent's poverty. *Id.*; *In re Daphnie E.*, 368 Ill. App. 3d at 1064. "Noncompliance with an imposed service plan, a continued addiction to drugs, a repeated failure to obtain treatment for an addiction, and infrequent or irregular visitation with the child have all been held to be sufficient evidence warranting a finding of unfitness" for this ground. *In re Jaron Z.*, 348 Ill. App. 3d at 259. Also, the supreme court has "implied that a parent's failure to comply with the directives of a service plan, *i.e.*, failure to make reasonable efforts or reasonable progress toward the return of the children, is analogous to a parent's failure to maintain a reasonable degree of interest, concern, or responsibility." *In re M.J.*, 314 Ill. App. 3d at 656. However, unlike when the trial court makes a finding as to reasonable efforts or reasonable progress, the trial court is not required to limit its findings to a specific time frame when determining the degree of the parent's interest, concern, or responsibility. *Id.*

¶ 29    In this case, the trial court found that the respondent failed to maintain a reasonable degree of interest, concern, and responsibility as to the children's welfare. The children were adjudicated neglected on September 7, 2022, based on allegations that the home was unclean, and the parents had ongoing drug use issues. The respondent was referred to parenting classes, mental health counseling, substance abuse counseling, and domestic violence counseling.

¶ 30    Throughout the duration of the case, the respondent never completed any of the assessments for his recommended services, and he only completed one drug screen. Samantha Schaller, the caseworker for the majority of the case, testified that the respondent's cooperation

11

was very minimal, that he was never rated satisfactory on any of the recommended services in his service plans, and that he was unsuccessfully discharged from parenting classes "several times" for failure to engage. Also, the respondent's visits with the children had been suspended because he spanked Matthew L. Jr. on two occasions during supervised visits. After the first time, he had been warned that his visits would be suspended if it happened again. When his visits were suspended, he was told that he would need to start parenting classes and make progress before visits were reinstated. However, he never engaged in parenting classes, so he never satisfied this condition.

¶ 31    Although the respondent testified at the fitness hearing that he completed 300-plus hours of parenting classes, he never provided a certificate of completion for these classes. Also, he acknowledged that he completed these classes sometime in 2002 or 2003, long before this case was opened, and since then, he had not successfully completed any parenting classes. The respondent claimed that he did not recall being asked to complete individual and mental health counseling and that he could not complete the domestic violence assessment because of Wi-Fi issues. He also claimed that he was not allowed to do the substance abuse classes at the health department, that he had already completed "all of that," and that there was no evidence of drugs being involved in this case. He further claimed that he struggled with transportation issues, which made it difficult to engage in services, and that his caseworkers provided no assistance for him. However, the trial court found the respondent's testimony incredible given the age of the case and the lack of any meaningful engagement in services, drug tests, and parenting time. The court noted that Schaller testified that the parents did not tell her that they had difficulty completing online services because of Wi-Fi issues, that they had attended child and family team meetings remotely

12

via Zoom, that some of their services had been modified from in-person to remote because of their transportation issues, and that they were offered assistance with transportation but refused.

¶ 32    Based on the testimony, the trial court concluded that the respondent had ample opportunity to request transportation assistance and failed to make the requests. The trial court again found the respondent's testimony incredible where he was essentially blaming the foster care agencies for his own failure to complete services. In addition, the trial court acknowledged that the respondent had been incarcerated at certain points throughout the case, which undoubtedly prevented him from engaging in services and parenting time. However, the trial court found that the respondent's incarceration was just further evidence of his failure to maintain a reasonable degree of responsibility for his minor children. Thus, the trial court found that the respondent's failure to show interest, concern, or responsibility for the minor children was evident.

¶ 33    On appeal, the respondent contends that the evidence that he failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare was "far from overwhelming and undisputed." He argues that the caseworkers' testimony consisted of conclusory and unproven general statements with no foundation or support from documentary evidence. He also argues that the State failed to present any competent, nonhearsay evidence to support the allegations in the petitions to terminate. Specifically, he notes that the State did not introduce into evidence any of the service plans, integrated assessments, or dispositional or permanency orders. In addition, he contends that he was provided ineffective assistance of counsel because his counsel failed to object to the introduction of adverse hearsay testimony from the caseworkers.

¶ 34    Parents are entitled to effective assistance of counsel in a termination of parental rights proceeding. *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 41. When determining whether a parent

received ineffective assistance in a proceeding to terminate his parental rights, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 42. To prevail on the claim, a parent must show counsel's performance was (1) deficient in that it fell below an objective standard of reasonableness and (2) prejudicial, where there is a reasonable probability the result of the proceeding would have been different but for counsel's errors. *Id.* Failure to establish either prong precludes a finding of ineffectiveness. *Id.*

¶ 35   Although the respondent contends that his trial counsel failed to object to certain hearsay evidence that was admitted at the fitness hearing, we note that, in his appellate briefs, the respondent does not identify the specific evidence that trial counsel should have objected to. Regardless, we note that, in support of his argument, the respondent points out that, during the fitness hearing, Brittany's counsel made the same arguments that the respondent claims his counsel should have made. Specifically, Brittany's counsel argued that, although the State presented several witnesses at the hearing, the State did not introduce into evidence any of the service plans, integrated assessments, or dispositional or permanency orders or request that the trial court take judicial notice of those documents. Brittany's counsel also argued that the testimony from the caseworkers was just "generalized statements without much foundation or specifics." Further, Brittany's counsel argued that the State had not met its burden of proof because there were "just too many generalized statements and not enough evidence as to what occurred when and/or services provided and financial means provided to the clients to allow them to complete the services."

¶ 36   The respondent argues that his trial counsel was ineffective because counsel failed to "echo or argue similar points despite the fact the observations were equally applicable" to the respondent. However, as the fitness hearing was a joint proceeding with the same witnesses and evidence

14

presented, and Brittany's counsel had already made these arguments, the respondent was not prejudiced by his counsel's failure to reiterate the same arguments. Moreover, we note that, in the trial court's order terminating the respondent's parental rights, the trial court specifically stated that evidence was received by way of testimony only, that no exhibits were introduced or admitted into evidence at the fitness hearing, and that the trial court took judicial notice of its own files pursuant to Illinois Rule of Evidence 201 (eff. Jan. 1, 2011).[2] However, the trial court noted that it only considered the documents entered into the record that did not contain hearsay.

¶ 37   In addition, the respondent contends that his trial counsel was ineffective for counsel's failure to present an effective cross-examination of Schaller, the only caseworker to provide direct testimony as to his conduct. In general, counsel's decision to cross-examine or impeach a witness is a matter of trial strategy that will not support a claim of ineffective assistance of counsel. *In re Commitment of Moore*, 2023 IL App (5th) 170453, ¶ 79. The respondent contends that, although Schaller had indicated that she had only attended one visitation between the parents and children during the time that she was the caseworker, his trial counsel failed to follow up in any significant way on this testimony. However, during the cross-examination of Schaller, defense counsel questioned Schaller about her only attending one visit in 2½ years as the caseworker and questioned Schaller about whether the respondent would have been provided transportation to his required drug screens. The respondent does not indicate what further information his counsel should have elicited from Schaller but failed to do so. Also, immediately before the respondent's counsel cross-examined Schaller, Brittany's counsel cross-examined Schaller about how Schaller

---

[2]In its September 20, 2024, fitness order, the trial court references Illinois Supreme Court Rule 201 (eff. Mar. 17, 2023). However, the portion of the rule that the trial court cited in its order was from Illinois Rule of Evidence 201 (eff. Jan. 1, 2011). Thus, it appears that the reference to the supreme court rule was a mistake.

did not have personal knowledge of the issues that had been documented during the parents' visitations with the children. Thus, we find that the respondent's argument lacks merit.

¶ 38   The respondent also argues that his counsel was ineffective for failing to make a record of him being incarcerated at certain points in the case, and its impact on his ability to complete services. The respondent contends that his trial counsel did not follow up after asking a caseworker, who had recently been assigned the case, whether she had ever met the respondent, and she responded, "no." However, that caseworker had not met with the respondent, because the respondent was incarcerated at that time. Although the mere fact of a parent's incarceration is not evidence of parental unfitness, the choice to continue criminal activity after the adjudication of neglect impacts a parent's ability to comply with service requirements. *In re M.A.*, 325 Ill. App. 3d at 392. In its order terminating the respondent's parental rights, the trial court noted that the respondent's incarceration had undoubtedly prevented him from engaging in services and parenting time. However, the trial court found that it was further evidence of the respondent's failure to maintain a reasonable degree of responsibility for his minor children. Thus, the respondent's counsel was not ineffective for failing to elicit further details about the respondent's incarceration at various times throughout the case, as such details would have served as further evidence of his lack of responsibility regarding the minor children.

¶ 39   After carefully considering the record, and the respondent's arguments on appeal, we find that there was sufficient nonhearsay testimony presented at the fitness hearing, which included the respondent's own testimony, to support the trial court's finding of unfitness. Accordingly, we conclude that the trial court's fitness finding that the respondent failed to maintain a reasonable degree of interest, concern, and responsibility as to the minor children was not against the manifest weight of the evidence. As we have found that the record supported the trial court's finding that

the respondent failed to maintain a reasonable degree of interest, concern, or responsibility to the children, we do not need to evaluate whether the trial court's finding that the respondent was unfit for lack of reasonable efforts was against the manifest weight of the evidence.

¶ 40    If the circuit court finds a parent to be unfit, the cause proceeds for the trial court to determine whether it is in the children's best interests for the parent's rights to be terminated. 705 ILCS 405/2-29(2) (West 2022); *In re C.W.*, 199 Ill. 2d at 210. At this stage of the proceedings, the focus of the trial court shifts to the children's best interests and away from the rights of the parent. *In re N.B.*, 2019 IL App (2d) 180797, ¶ 42. "[T]he parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d at 364. A finding that termination is in the children's best interest will not be reversed unless it is contrary to the manifest weight of the evidence. *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 74.

¶ 41    In reaching a best-interests determination, the circuit court must consider, within the context of the children's age and developmental needs, the following factors: (1) the children's physical safety and welfare; (2) the development of the children's identity; (3) the children's familial, cultural, and religious backgrounds and ties; (4) the children's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the children's wishes and long-term goals; (6) the children's community ties; (7) the children's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the children. *In re Nevaeh R.*, 2017 IL App (2d) 170229, ¶ 27; see also 705 ILCS 405/1-3(4.05) (West 2022).

¶ 42   Other important factors include the nature and length of the children's relationship with the present caretaker and the effect that a change of placement would have upon the emotional and psychological well-being of the children. *In re Nevaeh R.*, 2017 IL App (2d) 170229, ¶ 27. The circuit court is not required to articulate any specific rationale for its decision, and, on review, we may affirm the circuit court's decision without relying on any basis used by the circuit court. *Id.*

¶ 43   Here, the respondent argues that the evidence showed that he had been denied visitation and bonding with the children for almost two years; he had a residence that the agency never evaluated after the children were removed from the home; he shared a vehicle with Brittany, which impeded his progress in services; there was no evidence of him having any documented substance use history; and there was no evidence presented of "failed services for reunification."

¶ 44   In finding that termination of the respondent's parental rights was in the children's best interests, the trial court noted that the children resided with their foster family for 2½ years, their sister also lived in that home, and the children had bonded with the foster parents and called them mom and dad. The trial court found that the children received all of their love, attachment, sense of being valued, sense of security, sense of familiarity, and continuity of affection from the foster parents. The trial court noted that, after living such a long period of time with the foster parents, the least disruptive placement alternative for the children was the foster parents' home. The trial court recognized that the respondent was emotional during this testimony and that he loved the children. However, the trial court noted that the children needed and deserved permanence in their lives, they needed stability and continuity of relationships with parent figures and siblings, and they had enjoyed a stable home and continuing relationships with the foster parents for 2½ years. The trial court noted that the children had not visited with the respondent in nearly two years, and they had not asked about him. Thus, the trial court found that the only way to achieve permanence

18

for the children was to terminate the respondent's parental rights. Based on the above, and our review of the record, we find that the trial court's findings were not against the manifest weight of the evidence.

¶ 45    The respondent again argues that his trial counsel was ineffective for failing to object to the admission of hearsay evidence at the best-interests hearing, but we note that the trial court addressed this in its termination order. Specifically, the trial court noted that one of the caseworkers who testified at the best-interests hearing had only been the caseworker for one month. Also, the agency supervisor, who testified based on her review of the case report and her involvement as a supervisor of the case, admitted during cross-examination that she had no recent, direct involvement with the case and had reviewed reports from counselors approximately six months before the hearing. Consequently, the trial court found that their testimony was not particularly helpful. The trial court also noted that the supervisor testified that she had relied on the caseworkers' reports but had not observed the children for some time. She also prepared the best-interests report despite her lack of direct involvement in the case. Thus, the trial court declined to consider the information contained in the best-interests report because it was unclear as to what information was based on the supervisor's personal knowledge and what information was obtained from other caseworkers.

¶ 46    Also, we note that Brittany's attorney made similar arguments to what the respondent claims his attorney should have made at the hearing, which were addressed by the trial court when it made its termination decision. Therefore, the respondent was not prejudiced by his counsel's failure to reiterate arguments that were already made, especially since the trial court addressed those arguments when it found that termination was in the children's best interests.

19

Lastly, the respondent argues that, even if trial counsel's individual errors did not warrant him receiving a new trial, the cumulative effect of the errors at the adjudicatory, dispositional, and termination hearings created a pervasive pattern of unfair prejudice and deprived him of due process. In general, the individual trial errors that do not entitle a defendant to a new trial may do so if the errors, when considered in the aggregate, have the cumulative effect of denying respondent a fair trial. *People v. Howell*, 358 Ill. App. 3d 512, 526 (2005). However, "cumulative error can occur only when there is more than one error." *People v. Quezada*, 2024 IL 128805, ¶ 46. The respondent here identifies several errors that occurred at the adjudicatory and dispositional hearings as well as at the termination proceedings, some of which were not fully developed in his brief. As we have concluded that we lack jurisdiction to review any potential errors that occurred at the adjudicatory and dispositional hearings, we will not consider the cumulative effect of those alleged errors. We also will not consider the alleged errors that the respondent has merely stated and not fully developed in his brief. See *Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1040 (2009) (bare contentions that do not cite to any authority or are not supported by argument do not merit consideration on appeal). Further, we have already concluded that the respondent's trial counsel was not ineffective for counsel's failure to make certain evidentiary objections and failure to delve into certain issues at the termination proceedings. Thus, we find that there was no cumulative error.

¶ 47                                     III. CONCLUSION

¶ 48    Accordingly, we affirm the circuit court's unfitness findings entered on September 20, 2024, and the order terminating the respondent's parental rights entered on December 18, 2024, in case Nos. 21-JA-26 and 21-JA-27.

¶ 49    Affirmed.